In the

# United States Court of Appeals
## For the Seventh Circuit

───────────────

No. 21-2325

SAINT ANTHONY HOSPITAL,

*Plaintiff-Appellant,*

*v.*

THERESA A. EAGLESON, in her official capacity
as Director of the Illinois Department of
Healthcare and Family Services,

*Defendant-Appellee,*

and

MERIDIAN HEALTH PLAN OF ILLINOIS, INC., et al.,

*Intervening Defendants-Appellees.*

───────────────

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-02561 — **Steven Charles Seeger**, *Judge.*

───────────────

On Petitions for Rehearing and Rehearing En Banc

───────────────

DECIDED SEPTEMBER 8, 2022

───────────────

Before WOOD, HAMILTON, and BRENNAN, *Circuit Judges*.

On consideration of the petitions for rehearing en banc filed August 2, 2022 by Defendant-Appellee and Intervening Defendants-Appellees, no judge in active service has requested a vote on the petitions for rehearing en banc.[*] Judges Wood and Hamilton voted to deny panel rehearing; Judge Brennan voted to grant panel rehearing.

Accordingly, the petitions for rehearing en banc filed August 2, 2022 by Defendant-Appellee and Intervening Defendants-Appellees are DENIED.

HAMILTON, *Circuit Judge*, joined by WOOD, *Circuit Judge*. In view of the petitions' exaggerated accounts of the panel's decision, a few comments are in order. First, the panel opinion imposes no new duties on either State officials or managed care organizations. Nor does the panel opinion offer any path toward monetary liability for the State of Illinois or its officials. Only injunctive relief is at stake here: possible injunctive relief to push State officials to comply with duties already imposed by the Medicaid Act.

The panel recognizes the potential complexity and challenge of this case for the district court, but also its importance for plaintiff and other providers of health care to Medicaid patients, as well as for the patients themselves. The panel concluded that the case should not be dismissed on the pleadings but should proceed toward substantial discovery. That course will allow the district court to consider actual facts rather than

---

[*] Judge St. Eve did not participate in the consideration of these petitions for rehearing en banc.

No. 21-2325                                                3

just allegations in weighing whether injunctive relief is appro-
priate and what forms it might take.

Finally, the parties and all members of the panel recognize
that the Supreme Court may reshape applicable law in *Talev-
ski v. Health and Hospital Corp.*, 6 F.4th 713 (7th Cir. 2021), *cert.
granted*, 142 S. Ct. 2673 (2022). While that case proceeds in the
Supreme Court, however, the stakes of this case and the delay
plaintiff has already experienced in the courts weigh in favor
of allowing the case to proceed in the district court in parallel
with the Supreme Court's consideration of *Talevski*. Hence we
are not holding these petitions but issue the mandate with this
order denying them.

BRENNAN, *Circuit Judge*, dissenting from the denial of re-hearing.

I would grant panel rehearing of this case for the reasons stated in my concurrence in part and dissent in part, as well as those argued in the petitions for panel rehearing filed by the State of Illinois and the intervening managed care organizations (MCOs).

**A.**

The full context of this dispute shows how far the majority opinion goes.

Saint Anthony has provider contracts with the MCOs in the Illinois managed care program. Those contracts require the Hospital to submit any dispute arising under them to arbitration. So, arbitration is the path for the Hospital to secure relief on its payment terms. Saint Anthony asked to stay the arbitration of its contract and brought this lawsuit, asking that 42 U.S.C. § 1396u-2(f) be interpreted to recognize a new statutory duty. Only then did a route appear outside of the provider contract and the bargained-for dispute resolution of arbitration.

As seen in literature about private enforcement of the Medicaid Act under 42 U.S.C. § 1983,[1] circuit court enforcement of Medicaid provisions since *Gonzaga University v. Doe*, 536 U.S. 273 (2002), has never involved § 1396u-2(f). Now, not only has a private right of action been recognized for the first time as to § 1396u-2(f)—a conclusion I agree is compelled

---

[1] JANE PERKINS, NAT'L HEALTH L. PROGRAM, PRIVATE ENFORCEMENT OF THE MEDICAID ACT UNDER 42 U.S.C. § 1983 (2021), https://health-law.org/wp-content/uploads/2021/07/Fact-Sheet-1983-Enforcement.pdf.

under the *Blessing* factors—but the State is obliged under that Medicaid statute to proactively guarantee timely managed care payments to healthcare providers. That obligation is meant to be enforced under the arbitration clause pursuant to the MCO provider contracts.

I will not repeat the reasons why an administrative pre-requisite that a managed care contract includes deadlines is so different from a privately enforceable statutory duty to proactively guarantee timely managed care payments. To me, the text of § 1396u-2(f), the silence of its neighboring statutes as to a duty requiring state action, and the statutory incongru-ence created by the majority opinion's interpretation are re-vealing. They show that the text-based interpretation of § 1396u-2(f), in which the district court and I engage, is at least plausible.

A statute with more than one plausible interpretation of its text is ambiguous. *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 419 (2005). And the Supreme Court requires that before Spending Clause statutes impose duties on states, they must do so "unambigu-ously," "speak[ing] with a clear voice," *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981), and in statutory lan-guage that is "unmistakably clear." *Gonzaga*, 536 U.S. at 283 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989)). Adhering to these Supreme Court pronouncements, I would not conclude that § 1396u-2(f) imposes an enforceable duty.

**B.**

These two petitions for rehearing articulate well the bur-dens, practical problems, and changes in decisionmakers

resulting from the majority opinion's interpretation of § 1396u-2(f).

The State points out the heavy burdens this decision will place on various players in the complex world of Medicaid. The interpretation of § 1396u-2(f) presents "a question of first impression … with immense practical importance for Medicaid managed care programs nationwide, involving dozens of States and hundreds of billions of dollars in spending each year." The State fears the majority opinion will "impose on States a huge and unprecedented obligation to duplicate the administrative functions that Congress intended to be fulfilled by MCOs." The State also notes the impact this decision will have on federal courts to resolve the merits of "payment disputes between MCOs and providers as a predicate to determining whether States are liable for failing to ensure the MCOs are making payments on a timely basis." Medicaid managed care programs "serve more than 50 million individuals and involve annual expenditures of hundreds of billions of dollars." The State is concerned that "state Medicaid directors will have to decide whether to establish an administrative infrastructure to duplicate the claims-processing functions performed by MCOs or risk liability" under § 1396u-2(f).

The MCOs are worried that this decision "funnel[s] a subset of MCO-provider payment disputes into litigation, instead of arbitration, [which] will severely burden all interested parties (including federal courts)." Under this decision, "federal judges will become the arbiters of any MCO-provider disputes that providers can frame as involving 'systemic failure.'" The foundational question of whether providers should address disputes with MCOs through § 1983 claims or arbitration will arise. The MCOs lament the lack of guidance as to

"whether and when there is a 'systemic failure' sufficient to justify" a § 1983 claim. Rather than "costly litigation over the nature and scope of claims," the MCOs believe these disputes "could and should have been submitted to cost-effective arbitration."

The MCOs also point out the practical problems with the majority opinion's reading of § 1396u-2(f). For courts to determine if the predicate for State intervention—"systemic failures by MCOs to comply with the 30/90 payment schedule"—is satisfied, they have to determine "which claims (how many? what proportion?) are unpaid, paid late or paid with less transparency." These "determinations fall squarely within the broad arbitration provision in each provider contract," including Saint Anthony's.

To say the majority opinion only provides a new way under § 1983 to enforce existing obligations does not mitigate the substantial changes and alterations to the Medicaid landscape this decision creates. The "new world" of an enforceable duty under § 1396u-2(f) will require a huge amount of adaptation, new systems, and working through unseen problems, as the obligations on various players change and decisionmaking is shifted away from arbitrators to federal courts.

Because this decision will create tremendous burdens and complex practical problems, and federal courts will now have to consider and decide payment disputes between MCOs and providers that can be framed as involving "systemic failure," the proper interpretation of § 1396u-2(f) is a question of extraordinary significance which we should rehear.

## C.

So why not hear this case en banc? Because of the imminent possibility this area of law will change markedly.

This case may well merit rehearing en banc. Given the burdens and change in decisionmakers, it poses "a question of exceptional importance" under Federal Rule of Appellate Procedure 35(a)(2). And under the requirements before Spending Clause legislation imposes a duty on a state, "the panel decision conflicts with a decision of the United States Supreme Court" under Federal Rule of Appellate Procedure 35(b)(1)(A).

But since this case was argued in February, and before it was decided in July, the Supreme Court granted certiorari in another case from our court, *Talevski v. Health & Hosp. Corp. of Marion Cnty.*, 6 F.4th 713 (7th Cir. 2021), *cert. granted*, 142 S. Ct. 2673 (2022), *argument scheduled for* November 8, 2022. *Talevski* held that nursing home residents have privately enforceable rights under 42 U.S.C. §§ 1396r(c)(1)(A)(ii) and (c)(2)(A) to not be chemically restrained for disciplinary or convenience purposes, and to not be transferred or discharged from a facility unless certain criteria are met. 6 F.4th at 720.

*Talevski* concerned different Medicaid statutes. But one of the two questions presented on which the Supreme Court granted certiorari is broad: "[w]hether, in light of compelling historical evidence to the contrary, the Court should reexamine its holding that Spending Clause legislation gives rise to privately enforceable rights under Section 1983." Petition for a Writ of Certiorari at i, *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 142 S. Ct. 2673 (2022) (No. 21-806). The Court can answer this question in ways that will greatly impact the

decision in this case. Even Saint Anthony admits in its re-sponse to the petitions for rehearing en banc that "[i]f the Su-preme Court significantly changes its precedent on Medicaid private rights of action, those changes could affect the major-ity's opinion in this case."

If our court heard this case en banc, we would proceed parallel with the Supreme Court's consideration of *Talevski* and expend valuable court time and resources. Given the question presented quoted above, we would need to predict how the Supreme Court thinks that issue should come out, a task broader than the arguments before us in this case. So, en banc rehearing here likely would not be an efficient course given the grant of certiorari in *Talevski*.

In the alternative, as the State suggests, I would hold these petitions for rehearing pending the decision in *Talevski*. The non-prevailing parties here may petition the Supreme Court for a writ of certiorari, and even ask that Court for a stay. The Supreme Court may hold such a petition pending the resolu-tion of *Talevski*. Given the broad and deep impact of the ma-jority opinion, it would be best to resolve these petitions for rehearing with the counsel of *Talevski*, which could signifi-cantly change the legal landscape governing the interpreta-tion of § 1396u-2(f).

For these reasons, I respectfully dissent from the denial of panel rehearing. I would grant the petitions for panel rehear-ing and reconsider this decision, or in the alternative I would hold these petitions for rehearing subject to the outcome of *Talevski*.