**No. 21-2325**

# In the
# United States Court of Appeals
## for the Seventh Circuit

SAINT ANTHONY HOSPITAL,

*Plaintiff-Appellant,*

v.

THERESA A. EAGLESON, in her official capacity as Director of the Illinois Department of Healthcare and Family Services,

*Defendant-Appellee,*

and

MERIDIAN HEALTH PLAN OF ILLINOIS, INC., et al.,

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:20-cv-02561.

The Honorable **Steven Charles Seeger**, Judge Presiding.

## RULE 54 STATEMENT OF INTERVENING DEFENDANTS-APPELLEES, MANAGED CARE ORGANIZATIONS

STEVEN T. WHITMER
HUGH S. BALSAM
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
(312) 443-0700

*Counsel for Meridian Health Plan of Illinois, Inc.*

KIRSTIN B. IVES
FALKENBERG IVES LLP
230 West Monroe Street
Suite 2220
Chicago, Illinois 60606
(312) 566-4803

*Counsel for IlliniCare Health Plan*

| | |
|---|---|
| MARTIN J. BISHOP<br>KEVIN D. TESSIER<br>REED SMITH LLP<br>10 South Wacker Drive<br>40th Floor<br>Chicago, Illinois 60606<br>(312) 207-1000<br><br>*Counsel for Blue Cross Blue Shield*<br>*of Illinois, a division of Health Care*<br>*Service Corporation, a Mutual*<br>*Legal Reserve Company* | KIMBERLY M. FOXX<br>State's Attorney of Cook County<br>JONATHON D. BYRER<br>SILVIA MERCADO MASTERS<br>Assistant State's Attorneys<br>500 Richard J. Daley Center<br>Chicago, Illinois 60602<br>(312) 603-7795<br><br>*Counsel for Cook County, through*<br>*its Health & Hospitals System*<br>*d/b/a Cook County Health* |

**INTRODUCTION**

Pursuant to Circuit Rule 54 and this Court's July 24, 2023 and August 1, 2023 Orders, the four intervening managed care organizations—Meridian Health Plan of Illinois, Inc., IlliniCare Health Plan, Health Care Service Corporation (a Mutual Legal Reserve Company operating in Illinois as Blue Cross and Blue Shield of Illinois), and Cook County Health & Hospitals System d/b/a CountyCare Health Plan (collectively, the "MCOs")—hereby submit this Statement of their "position[ ] as to the action which ought to be taken by this court on remand."

As further explained below, the MCOs defer to the State's position on which, if any, of Appellant Saint Anthony Hospital's claims survive in light of the recent decision in *Health and Hospital Corp. of Marion County v. Talevski*, 143 S. Ct. 1444, 599 U.S. ___ (2023). The MCOs, however, separately seek leave from this Court to brief the following three issues, which remain at the core of this dispute: (1) why this lawsuit is an improper end run by Saint Anthony around the broad arbitration provisions it agreed to with the MCOs; (2) why arbitration in this context would not be unsatisfactory, unmanageable or impractical; and (3) why a severe burden would be imposed on all parties if arbitrable MCO-provider payment disputes that allegedly involve "systemic" issues were litigated in court, rather than arbitration. In further support of this request, the MCOs state as follows.

## BACKGROUND

The MCOs intervened as of right in the district court. (ECF No. 75.)[1] In allowing intervention, the district court acknowledged that the relief Saint Anthony requested in this suit "would compel the State to compel payment from the MCOs" or "to 'immediately terminate its MCO contracts.'" (*Id.* at 4.) The district court determined that the MCOs had both "a financial interest in the outcome of the case" and a "contractual interest" in arbitrating any payment disputes with Saint Anthony and that the MCOs have the right to intervene in order to vindicate those interests. (*Id.* at 4–5.)

Saint Anthony's entitlement to payments from the MCOs arises solely because it entered into provider contracts with them. (*See* ECF No. 74, at 2–9.) These contracts govern all aspects of the MCOs' relationship with Saint Anthony. They determine whether, when, and how the MCOs must pay claims that Saint Anthony submits to them. (*See id.*) Importantly, Saint Anthony's contracts with the MCOs contain an arbitration provision requiring (or in the case of CountyCare, allowing) Saint Anthony to submit to binding arbitration any dispute arising under the agreement. (ECF No. 78-1, at 16, §§ 6.1–6.2; ECF No. 79, at 20–21, § XIII(2); ECF No. 80, at 3–4, (quoting § 11.3); ECF No. 83 at 3–4 (quoting §§ 9.1–9.2).) For example, Blue Cross's provider contract requires arbitration of "any dispute between Plan and Contracting Provider arising out of, relating to, involving the interpretation of, or in any other way pertaining to this Agreement." (ECF No. 79, at 20, § XIII(2).)

---

[1] "ECF No. x" refers to the district court docket. "Dkt. No. x" refers to this Court's docket in Case No. 21-2325. All page references are to the page of the original document.

The MCOs moved to compel arbitration because the only way to resolve the payment disputes Saint Anthony alleges it has with the MCOs is by referencing, considering and applying the detailed roadmaps for claim payment disputes set forth in the provider contracts. (ECF Nos. 78–80, 83.) Additionally, Meridian initiated an arbitration against Saint Anthony, which is currently stayed. (ECF Nos. 28-6, 96–97.) When the district court granted the State's motion to dismiss and disposed of Saint Anthony's Complaint for failure to state a cause of action, there was nothing left to arbitrate. (*See generally* ECF No. 108.) Accordingly, the district court denied as moot the MCOs' motions to compel arbitration. (ECF No. 107.)

This Court's now-vacated opinion noted that arbitration is "one path" to resolving Saint Anthony's dispute. (Dkt. No. 60, at 7.) The majority acknowledged that arbitration with the MCOs would "likely" be required if Saint Anthony had sued them directly, and further observed that "factual issues related to the MCOs appear intertwined with Saint Anthony's claim against [the State]." (*Id.* at 7, 44.) But the majority held that recognizing a Section 1983 claim in this case would not be "inconsistent with a carefully tailored [Congressional] scheme" that includes enforcement of prompt pay requirements through arbitrations conducted pursuant to the contracts between Saint Anthony and the MCOs. (*See id.* at 35, 43–44 (citations and internal marks omitted).) The majority deemed arbitration potentially impractical under the mistaken belief that it would involve "arbitration for each individual claim in dispute, which could easily involve many thousands of individual claims each year" and that these "thousands of claims" would be "all in their own

5

arbitrations." (*Id.* at 7, 35.)  Nevertheless, the majority correctly recognized that the district court had declined to rule on the MCOs' request for arbitration and "decline[d] to do so here as well" because the issue was not before the Court.  (*Id.* at 44.)

Judge Brennan, in dissent, recognized that Saint Anthony's remedy for the MCOs' alleged slow payment and lack of transparency lies in arbitrations directly with each MCO: "By requiring contractual provisions that MCOs make timely payments, § 1396u-2(f) enables a healthcare provider like Saint Anthony to privately enforce their contractual rights against MCOs directly through arbitration or litigation. . . . The Hospital has contracts with MCOs, each of which contains a bargained-for arbitration clause." (*Id.* at 51.)

On remand to the district court, the MCOs submitted a joint motion to compel arbitration.  (ECF Nos. 136, 147.)  That motion is fully briefed, and the district court is holding it in abeyance while the parties pursue mediation.  (*See* ECF No. 138.)

## THE MCOS' REQUEST FOR SUPPLEMENTAL BRIEFING

The MCOs defer to the State's position regarding which, if any, of Saint Anthony's claims survive in light of the U.S. Supreme Court's recent decision in *Talevski* and submit this separate Statement solely to respectfully request leave to submit supplemental briefing on three issues.

First, the MCOs continue to view this entire lawsuit as an improper attempt by Saint Anthony to evade its bargained-for arbitration obligations.  At the end of the day, all paths for legal relief for alleged "systemic defects" necessarily require arbitration because there is no way to determine if there is a systemic problem here

6

without first examining healthcare claims to see if they involve late pay or lack of transparency in violation of the provider agreements between Saint Anthony and the MCOs. That inquiry runs directly into the contractual arbitration provisions. Accordingly, upon any remand to the district court, the MCOs intend to renew their request for a stay in favor of arbitration.

Second, the MCOs disagree that the "path forward" involving arbitrations between Saint Anthony and the MCOs might somehow be unsatisfactory, unmanageable or impractical here. *Cf. Saxon v. Sw. Airlines Co.*, 993 F.3d 492, 495 (7th Cir. 2021) (discussing the liberal federal policy favoring arbitration). That view appears to rest, in part or in whole, on the mistaken premise that the arbitration provisions in question would require thousands of individual arbitrations for each separate benefits determination by the MCOs. Nothing in the agreed-to arbitration provisions requires such a cumbersome means of adjudication. Moreover, in practice, that is simply not how claims arbitrations are conducted. Rational parties trying to maximize efficiency and minimize expenses would not proceed in that fashion. Most likely, there would be just four arbitrations—one with each MCO—in which Saint Anthony could raise all of its disputes with that particular MCO.

Third, treating any MCO-provider payment disputes allegedly involving "systemic" issues as constitutional issues to be litigated in court, instead of arbitrated by the parties to the contract, would severely burden all interested parties (and federal courts), would increase avoidable costs, and may well prove to be unworkable. In fact, such a decision could negatively impact the Medicaid programs in all states,

7

not just Illinois, because nearly seventy percent of Medicaid beneficiaries nationwide are enrolled in managed-care plans. *See, e.g.*, Elizabeth Hinton & Lina Stoylar, *10 Things to Know About Medicaid Managed Care*, KRR.ORG (Feb. 23, 2022), https://www.kff.org/medicaid/issue-brief/10-things-to-know-about-medicaid-managed-care/.

Each of these issues is of substantial importance, and each warrants careful consideration alongside the issues briefed by the State relating to the Supreme Court's decision in *Talevski*. Accordingly, the MCOs respectfully request that they be given leave to submit supplemental briefing to address these important issues.

Dated:  September 5, 2023                                  Respectfully submitted,

Meridian Health Plan of Illinois, Inc.          IlliniCare Health Plan

By:  /s/ *Hugh S. Balsam*                                 By:  /s/ *Kirstin B. Ives*
        One of its Attorneys                                          One of its Attorneys

Steven T. Whitmer                                           Kirstin B. Ives
  (ARDC 6244114)                                              (ARDC 6289952)
swhitmer@lockelord.com                             kbi@falkenbergives.com
Hugh S. Balsam                                                Megan A. Zmick
  (ARDC 6228802)                                            Falkenberg Ives LLP
hbalsam@lockelord.com                              230 W. Monroe Street, Suite 2220
Locke Lord LLP                                               Chicago, Illinois 60606
111 South Wacker Drive                              Phone: (312) 566-4803
Chicago, Illinois  60606
Phone: (312) 443-0700

| | |
|---|---|
| Blue Cross and Blue Shield of Illinois, a division of Health Care Service Corporation, a Mutual Legal Reserve Company | Cook County, through its Health & Hospitals System d/b/a Cook County Health |
| By: /s/ *Kevin D. Tessier* <br>     One of its Attorneys | By: /s/ *Silvia Mercado Masters* <br>     One of its Attorneys |
| Martin J. Bishop, Esq.<br>  (ARDC 6269425)<br>mbishop@reedsmith.com<br>Kevin D. Tessier, Esq.<br>  (ARDC 6238232)<br>ktessier@reedsmith.com<br>Reed Smith LLP<br>10 South Wacker Drive,<br>40th Floor<br>Chicago, Illinois 60606<br>Phone: (312) 207-1000 | Kimberly M. Foxx<br>State's Attorney of Cook County<br>Silvia Mercado Masters<br>  (ARDC 6272716)<br>Assistant State's Attorney<br>silvia.mercadomasters@cook countyil.gov<br>500 Richard J. Daley Center<br>Chicago, Illinois 60602<br>(312) 603-7795 |

9