No. 21-2325

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

SAINT ANTHONY HOSPITAL,
*Plaintiff-Appellant*,

v.

THERESA EAGLESON, in her official capacity as Director of the Illinois Department of Healthcare and Family Services,
*Defendant-Appellee.*

On Remand from the Supreme Court of the United States

**SAINT ANTHONY HOSPITAL'S CIRCUIT RULE 54 STATEMENT**

Michael L. Shakman
Edward W. Feldman
William J. Katt
Mary Eileen Cunniff Wells
MILLER SHAKMAN LEVINE & FELDMAN LLP
30 West Monroe, Suite 1900
Chicago, Illinois 60603
Tel: (312) 263-3700
mlshak@aol.com
efeldman@millershakman.com
wkatt@millershakman.com
mwells@millershakman.com

*Counsel for Saint Anthony Hospital*

The Supreme Court remanded this case "for further consideration in light of *Health and Hospital Corporation of Marion Cty. v. Talevski*, 599 U.S. \_\_\_, 143 S. Ct. 1444 (2023) [("*Talevski II*")]." App.R.82, Order of June 20, 2023.[1] *Talevski II* affirmed this Court's decision in *Talevski v. Health and Hospital Corporation*, 6 F.4th 713 (7th Cir. 2021) ("*Talevksi I*"), and reaffirmed the case law regarding individual rights of action this Court relied upon in *Talevski I*. In its original judgment in this case reversing the district court's dismissal of Plaintiff-Appellant Saint Anthony Hospital's complaint, this Court applied *Talevski I* and the same line of cases the Supreme Court has just reaffirmed. Accordingly, the Court's original judgment should be reinstated.

## BACKGROUND

Saint Anthony sued Theresa Eagleson in her official capacity as director of the Illinois Department of Healthcare and Family Services ("HFS"), seeking to enforce via 42 U.S.C. § 1983 its rights created by the federal Medicaid statute, including 42 U.S.C. §§ 1396u-2(f) ("Section u-2(f)") (Count I) and 1396a(a)(8) (Count II). Saint Anthony requests injunctive relief directing HFS to fulfill its duties, *inter alia*, to ensure that Medicaid providers like Saint Anthony are paid on the 30/90 day schedule provided in the Medicaid statute. R1. Saint Anthony's Motion for Leave to File Supplemental Complaint ("Motion to Supplement") also sought leave to bring a claim

---

[1] Documents on the district court's CM/ECF docket are cited "R"; documents on the appellate docket are cited as "App.R." The use of "(cleaned up)" indicates that internal quotation marks, alterations, and citations have been omitted from quotations. Italics in quoted material have been added unless noted.

under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution pursuant to § 1983. R101. The district court dismissed the complaint and denied leave to file a supplemental complaint. R107–11.

On July 5, 2022, this Court (i) reversed the district court's dismissal of Count I, holding that Saint Anthony alleged a viable right under Section u-2(f) that is enforceable under § 1983; (ii) affirmed the district court's dismissal of Count II; and (iii) reversed the district court's denial of Saint Anthony's Motion to Supplement (the "Original Ruling"). 40 F.4th 492 (2022), App.R.60–61. The Court denied rehearing and rehearing *en banc* on September 8, 2022, 48 F.4th 737 (2022), App.R.79. In concluding in the Original Ruling that Saint Anthony had alleged a right of action under § 1983 to enforce Section u-2(f), this Court relied upon its opinion in *Talevski I*, a case for which the Supreme Court had granted *certiorari*, 142 S. Ct. 2673 (2022), but not yet heard argument or decided at the time of the Original Ruling.

HFS filed a petition for *certiorari* asking the Supreme Court to hold its petition pending its decision in *Talevski*, and then (i) grant *certiorari* and vacate the Original Ruling and remand for further consideration, or (ii) set the case for plenary review regarding whether Section u-2(f) gave Saint Anthony an enforceable right under § 1983. HFS did not ask the Supreme Court to review this Court's reversal of the district court's denial of Saint Anthony's Motion to Supplement. On June 8, 2023, the Supreme Court affirmed *Talevski I*. *Talevski II*, 599 U.S. ___, 143 S. Ct. 1444 (2023). On June 20, 2023, the Supreme Court granted HFS's petition for *certiorari*,

2

vacated this Court's judgment and remanded for further consideration in light of *Talevski II*. App.R.82.

## LEGAL STANDARD

A grant of *certiorari* with an order vacating the judgment and remanding to the Court of Appeals (a "GVR Order") is not a decision on the merits. *See Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001). It does not imply that the Court of Appeals erred, nor suggest the correct outcome. *See Klikno v. United States*, 928 F.3d 539, 544 (7th Cir. 2019) (rejecting argument that a GVR order carries a presumption that the result should change and concluding that nothing in the Supreme Court's intervening opinion required a different result in the six cases remanded). Rather, "[t]he GVR order . . . is an efficient way for the Supreme Court to obtain the views of the lower courts on the effect of a new decision, whatever those views might be." *Lawrence v. Chater,* 516 U.S. 163, 167 (1996). *Accord Gonzalez v. Justs. of Mun. Ct. of Bos.*, 420 F.3d 5, 7–8 (1st Cir. 2005); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 845 (6th Cir. 2013); *Cole v. Carson*, 935 F.3d 444, 450 n.21 (5th Cir. 2019), *as revised* (Aug. 21, 2019).

## SAINT ANTHONY'S POSITION

This Court should reaffirm its Original Ruling and reinstate the judgment because *Talevski II* reenforced by a 7-2 vote the very case law this Court carefully and correctly applied both in this case and in *Talevski I*.[2]

Importantly, this Court is not called upon to rule on a blank slate. The Original Ruling was detailed and comprehensive, based on careful review of thorough briefs. The Court also denied HFS's fully-briefed Petition for Rehearing, with both the majority and dissent from the Original Ruling offering substantive reasons for their positions on rehearing. 48 F.4th 737. In doing so, this Court rejected HFS's request

---

[2] As one commentor explained:

> In the end, despite 74 pages of analysis, *Talevski [II]* doesn't change much: A supermajority of the Court still believes that Spending Clause legislation can create rights enforceable under § 1983—and thus refused to upend decades of precedent providing the foundation for much civil-rights litigation.

T. Dooley and D. Roth, *Supreme Court Update: Health & Hospital Corp. of Marion County v. Talevski* (Jun. 20, 2023), https://www.wiggin.com/publication/supreme-court-update-health-hospital-corp-of-marion-county-v-talevski-no-21-806-lac-du-flambeau-band-of-lake-superior-chippewa-indians-v-coughlin-no-22-227-smith-v-united-states-no-21/.

Other commentators agree:

> Talevski serves as a key decision in the Section 1983 lineage, preserving an important avenue for providers and beneficiaries alike seeking to enforce rights under Medicaid.

P. Garcia, E. Sclar, K. Carroll, *How Spending Clause Ruling May Affect Medicaid Litigation*, Law360 (Jul. 5, 2023, 6:48 PM), https://www.law360.com/articles/1694527/how-spending-clause-ruling-may-affect-medicaid-litigation.

to stay the mandate pending the Supreme Court's decision in *Talevski*, even though "the parties and all members of the panel recognize that the Supreme Court may reshape applicable law in *Talevski [II]*." *Id.* at 738. It turned out that the Supreme Court did not reshape the law at all in *Talevski II*. A supermajority affirmed this Court's decision based on "the test that our precedents establish[.]" 143 S. Ct. at 1462. This Court has no reason to revisit the Original Ruling in this case that it has already passed upon twice.

1.  **The Original Ruling Faithfully Followed *Talevski I* and Precedents That the Supreme Court Reaffirmed in *Talevski II.***

The Original Ruling relied on prior Supreme Court decisions to conclude that Saint Anthony had alleged a viable claim under Section u-2(f). In reaching that conclusion, the Original Ruling expressly applied this Court's prior *Talevski I* decision—the very decision that the Supreme Court has now affirmed—as well as a line of Seventh Circuit decisions applying the Supreme Court precedent. The Original Ruling noted that under *Blessing v. Freestone,* 520 U.S. 329, 340 (1997), and *Gonzaga University v. Doe,* 536 U.S, 273, 286 (2002), a plaintiff must assert "the violation of a federal *right*, not merely a violation of federal *law*" and the statute must be "phrased in terms of the persons benefited *with an unmistakable focus* on the benefited class." 40 F.4th at 502–03 (cleaned up; italics in original). *Talevski II* reaffirmed the vitality of the *Gonzaga-Blessing* standard applied in *Talevksi I* and in the Original Ruling, as discussed below.

The Original Ruling carefully applied the *Gonzaga-Blessing* principles to Section u-2(f). *Gonzaga,* the Original Ruling stated, requires that the statutory

5

language make clear that "Congress must have '*intended to create a federal right*[.]'" 40 F.4th at 502–03 (quoting *Gonzaga*, 536 U.S. at 283). The Original Ruling applied each of the *Gonzaga-Blessing* factors in a careful analysis that extends over eight single-spaced pages in the Federal Reporter, relying on both *Talevski I* and several Seventh Circuit cases that had applied the *Gonzaga-Blessing* factors. *See* 40 F.4th at 505–13. *Talevski II* reaffirmed that approach.

The Original Ruling also addressed whether, despite the fact that Section u-2(f) states that Congress intended to create individual rights in Medicaid providers to receive timely payment, defendant HFS could show that Congress had created "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.* at 514 (citing *Blessing* and *Gonzaga*, cleaned up). After careful analysis, the Original Ruling concluded that there was no such incompatibility foreclosing an individual right to sue. *Id.* at 514–15. The Supreme Court did not change the applicable rules on this issue, as discussed below.

Applying the same factors to Section 1396a(a)(8) of the Medicaid statute (Count II of Saint Anthony's Complaint), the Original Ruling affirmed the aspect of the district court's ruling finding that section does not provide Saint Anthony a right to enforce the "reasonable promptness" standard for payments contained in it. *Id.* at 515–16 . This Court concluded that providers like the Hospital were not intended beneficiaries of the statutory language. *Id.* That issue was not presented in HFS's petition for *certiorari* and is not in dispute at this point in the litigation.

6

Lastly, the Original Ruling (i) reversed the district court's denial of Saint Anthony's Motion to Supplement, *id.* at 516–19, and (ii) declined the Managed Care Organizations' ("MCOs") request to stay the case so that the issues raised by Saint Anthony could be decided by arbitrations with the MCOs, *id.* at 519. Neither of those issues was the subject of HFS's petition for *certiorari*. Neither issue was presented in *Talevski,* nor decided by the Supreme Court. Therefore, those aspects of the Original Ruling should be reinstated without further discussion.

**2.    The Supreme Court Reaffirmed the Law This Court Had Applied.**

The Supreme Court's decision in *Talevski II* is lengthy and careful. Neither the majority opinion, joined in full by seven Justices, nor the two concurring opinions, modified any aspect of the case law that this Court had correctly applied in the Original Ruling. All seven Justices agreed that the existence of a private right to sue depends upon the specific statutory language Congress enacted. They also agreed that a statutory remedy will only foreclose a private right to sue, once such a right is found in the statutory language, if Congress explicitly or implicitly foreclosed § 1983's use. The Supreme Court's discussion of these principles not only said nothing to cast doubt on this Court's analysis in the Original Ruling, it reaffirmed the foundation of Supreme Court and Seventh Circuit precedent on which the Original Ruling rested.

**A.    The Supreme Court reaffirmed *Gonzaga and Blessing* and the analysis to determine if a statute is privately enforceable through § 1983.**

In *Talevski II* the Supreme Court clearly reaffirmed *Gonzaga* (which itself applied *Blessing*) and the "established method for ascertaining unambiguous

7

conferral" of individual rights, 143 S. Ct. at 1457, that this Court applied in its Original Ruling, 40 F.4th at 502–14.

The Supreme Court affirmed *Talevski I*, focusing its analysis on *Gonzaga*'s restatement of the first *Blessing* factor. *Gonzaga,* the Supreme Court stated, "sets forth our established method for ascertaining unambiguous conferral [of individual rights]. Courts must employ traditional tools of statutory construction to assess whether Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs." 143 S. Ct. at 1457. *See also Blessing*, 520 U.S. at 329 ("Congress must have intended that the provision in question benefit the plaintiff."). The Court added that if the private rights granted are clear, they are presumptively enforceable. As applied in *Talevski II*, the Court held that "[t]he [statute's] unnecessary-restraint and predischarge-notice provisions [applicable to nursing home residents] use clear rights-creating language, speak in terms of the persons benefited, and have an unmistakable focus on the benefited class. . . . Thus, they satisfy *Gonzaga*'s stringent standard, and the rights they recognize are presumptively enforceable under § 1983." 143 S. Ct. at 1459 (cleaned up). As discussed below, the Original Ruling faithfully applied this unchanged, individual rights standard to uphold Saint Anthony's right to sue HFS.

That the Supreme Court did not discuss or apply the other two *Blessing* factors simplifies matters on remand. *Talevski II* can be read either to have found those two factors satisfied *sub judice* without changing the law applicable to them, or the opinion can be read as implicitly concluding that the first factor—as clarified by

*Gonzaga*—is dispositive when it is satisfied. Neither reading casts any doubt on this Court's holding in the Original Ruling because it correctly determined that Section u-2(f) unambiguously conferred individual rights on Saint Anthony to prompt payment. That is all that *Talevski* II requires. Thus, *Talevski II* affords no basis to change the outcome that the Original Ruling ordered—reversal and remand so that Saint Anthony can pursue its claims.

**B.     The Supreme Court reaffirmed the principles to determine if the statutory remedy precludes an individual right to sue.**

The Supreme Court also clearly affirmed the rule that this Court recognized and applied in the Original Ruling—that a private right to sue will not arise if Congress expressly or implicitly foreclosed a remedy under § 1983. 143 S. Ct. at 1459; 40 F. 4th at 514. Where, as here and in *Talevski II*, there is no express language foreclosing private rights enforcement, "[o]ur precedents," the Supreme Court stated, "make clear that the *sine qua non* of a finding that Congress implicitly intended to preclude a private right of action under § 1983 is incompatibility between enforcement under § 1983 and the enforcement scheme that Congress has enacted." 143 S. Ct. at 1459. The Supreme Court made clear that "incompatibility" required that Congress have created an express private judicial right of action apart from § 1983, or that private enforcement would thwart operation of a comprehensive administrative remedial scheme. *See* 143 S. Ct. at 1460. In so ruling, the Court applied its precedents in a straightforward manner, without any jurisprudential reshaping.

**3.   Nothing in *Talevski II* Casts Doubt on This Court's Conclusion That the Prompt Payment Provisions Are Individually Enforceable.**

Because *Talevski II* reaffirmed the law this Court applied in the Original Ruling, there is no basis for this Court to revisit or change its holding. This Court faithfully and properly applied the individual rights and incompatibility standards of *Gonzaga-Blessing* and other cases.

**A.   Statutory language in this case establishes individual rights.**

The Supreme Court held that the provisions of the statute at issue in *Talevski II* satisfies the *Gonzaga* standard because they "use clear rights-creating language, speak in terms of the persons benefited, and have an unmistakable focus on the benefited class." 143 S. Ct. at 1458–59 (cleaned up). As such, the rights they recognize are presumptively enforceable under § 1983. *Id.*

The Original Ruling examined in detail the prompt payment provision of the Medicaid statute and applied the same standard to conclude that it was clearly intended to grant individually-enforceable rights to medical service providers. 40 F.4th at 505–08. The reasons stated in the Original Ruling mirror those applied in *Talevski II*. That is hardly surprising, since the Original Ruling had applied *Talevski I*, which the Supreme Court affirmed.

As in *Talevski II*, the Original Ruling found that the language of the statute requiring prompt payment to providers uses clear rights-creating language. This Court found that the statutory text used mandatory terms focusing on prompt payment to health care providers, including "whether *individual* providers are receiving the payments in the timeframe promised." 40 F.4th at 507 (italics in

original). Likewise, the statute focuses on the benefits conferred. As this Court found, "[n]o one benefits more directly from a requirement for timely payments to providers than the providers themselves." *Id.* at 505. This Court thus concluded that Section u-2(f) "uses 'individually focused terminology,' unmistakably 'phrased in terms of the persons benefited,'" just as *Gonzaga*—and now *Talevski II*—requires. 40 F.4th at 508 (cleaned up; quoting *Gonzaga*).

The statutory language in this case is at least as compelling as that in *Talevski II* and leads to the same conclusion: Congress intended to grant providers of Medicaid services the right to enforce Section u-2(f)'s timely payment requirement in accord with the 30/90-day schedule Congress enacted.

### B.　There is no incompatible statutory remedy in this case.

As noted, the Supreme Court's discussion and application changed no aspect of the principles that determine whether Congress created an incompatible federal remedy foreclosing an individual right to sue. It applied the existing precedent that this Court had applied in *Talevski I* (and reapplied in this case in the Original Ruling). Thus, there is no basis to reconsider the Original Ruling's conclusion that private enforcement of Section u-2(f), via § 1983, is not incompatible with any federal statutory enforcement procedures.

The Supreme Court reaffirmed that the "[t]he crucial consideration is whether Congress intended a statute's remedial scheme to be *the exclusive avenue* through which a plaintiff may assert his claims." 143 S. Ct. at 1459 (cleaned up; italics in original). In order to meet that standard, the statutory enforcement must be

11

"*incompatible* with individual enforcement under § 1983." *Id.* at 1460 (cleaned up; italics in original).

This Court asked and answered the same question under the same principles in the Original Ruling. Like the right at issue in *Talevski II*, the Medicaid Act contains no express provision foreclosing a private right of action under Section u-2(f). Indeed, the Original Ruling noted that "HFS has not identified any express language in the Medicaid Act foreclosing private rights enforcement." 40 F.4th at 514. And the Original Ruling correctly rejected HFS's argument that a contractual arbitration right available to providers under their contracts with MCOs somehow evidenced Congress' intention that there be no private remedy against the State. It did so by applying the standard reaffirmed in *Talevski II,* adopted from *Gonzaga*:

> That avenue [arbitrations] represents a claim-by-claim adjudication on the individual provider-MCO level, across many thousands of claims, all in their own arbitrations. It's not immediately obvious that this dispute-resolution system would even be manageable, let alone superior to a systemic solution implemented by HFS. At the very least, we are not persuaded that Congress, implicitly through the contractual model, created "a comprehensive enforcement scheme that is incompatible with individual enforcement under section 1983." *Gonzaga*, 536 U.S. at 285 n.4, . . ."

40 F.4th at 515 (cleaned up).

The Original Ruling spelled out in detail the statutory provisions imposing on HFS a provider-protection statutory scheme strikingly similar to the requirements imposed on government agencies to assure the nursing-home-resident protections described by the Supreme Court in *Talevski II*. The Original Ruling confirms that this Court fully understood and carefully considered the nature of the statutory

enforcement scheme, one very similar to that in *Talevski II*. It concluded that the statutory scheme was not incompatible with private enforcement by applying the same standards and analysis as the Supreme Court in *Talevski II*. *Compare* 40 F.4th at 509–10 *with* 143 S. Ct. at 1456. In short, the very similar statutory provisions for government to monitor and enforce the rights at issue in both cases do not constitute an exclusive federal remedy incompatible with an individual right to sue.

### C.     The law is unchanged since this Court ruled.

Saint Anthony has avoided the temptation to rehash the details so thoroughly briefed in this appeal, and on rehearing, and twice considered by this Court. It is unnecessary because the bottom line is that this Court faithfully applied then-existing Supreme Court and Seventh Circuit law, including *Talevski I*, that the Supreme Court has reaffirmed by a 7-2 majority without material modification. If anything, in affirming *Talevski I*, the Supreme Court buttressed that body of well-defined law.

It seems likely (although we cannot know) that the reason the Supreme Court granted *certiorari* in *Talevski II* was to consider the first issue addressed and rejected in the opinion, whether "§ 1983 contains an implicit carveout for laws that Congress enacts via its spending power." 143 S. Ct. at 1450. A contrary ruling on that issue would indeed have overruled and "reshaped" the law. Having reaffirmed existing precedent on that issue, the Court turned to the existing *Gonzaga* line of cases, which the parties had not asked the Court to modify. It applied that precedent in a

13

straightforward fashion that seven Justices endorsed. That is the law this Court applied in the Original Ruling.

Two concurring opinions cautioned the need for special care in determining whether Spending Clause statutes give rise to individual rights under *Gonzaga*, and in evaluating whether such rights would be inconsistent with any statutory remedy. *See* 143 S. Ct. at 1462–64. That is not a new standard. Justice Jackson's Opinion of the Court, which the concurring Justices joined in full, observed that "our precedent sets a demanding bar: Statutory provisions must *unambiguously* confer individual federal rights. *Id.* at 1455 (citing *Gonzaga*) (italics in original). Justice Jackson also characterized the *Gonzaga* rights-creating test as a "stringent standard" and a "significant hurdle," albeit one that once cleared, creates a presumption of enforceability via § 1983. *Id.* at 1457–58.

This Court faithfully applied that stringent standard in the Original Ruling. It recognized that the Supreme Court has "cautioned against finding rights" in the context of Spending Clause legislation, 40 F.4th at 503, and meticulously undertook the careful analysis required by *Gonzaga* (and now reaffirmed in *Talevski II*) to conclude correctly that Section u-2(f) meets its standard.

## CONCLUSION

The Opinion of the Court in *Talevski II* concluded that "the test that our precedents establish leads inexorably to the conclusion that the FNHRA secures the particular rights that Talevski invokes, without otherwise signaling that enforcement of those rights via § 1983 is precluded as incompatible with the FNHRA's remedial

14

scheme." 143 S. Ct. at 1462. This Court applied the same established precedents in the Original Ruling, and its conclusion followed just as inexorably from the unchanged precedents. The Court should reinstate its Original Ruling and judgment, and remand once again for further proceedings consistent with it.

| | |
|---|---|
| Dated: September 5, 2023 | Respectfully submitted,<br><br>SAINT ANTHONY HOSPITAL<br><br>By: */s/ Michael L. Shakman*<br><br>*One of its attorneys*<br><br>Michael L. Shakman<br>Edward W. Feldman<br>William J. Katt<br>Mary Eileen Cunniff Wells<br>MILLER SHAKMAN LEVINE & FELDMAN LLP<br>30 West Monroe, Suite 1900<br>Chicago, Illinois 60603<br>Tel: (312) 263-3700<br>mlshak@aol.com<br>efeldman@millershakman.com<br>wkatt@millershakman.com<br>mwells@millershakman.com |

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on September 5, 2023, I electronically filed this response with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. All participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

September 5, 2023　　　　　　　　　　*/s/ Michael L. Shakman*
　　　　　　　　　　　　　　　　　　*One of the attorneys for Plaintiff-Appellant*
　　　　　　　　　　　　　　　　　　*Saint Anthony Hospital*