No. 21-2325

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

———————————————

SAINT ANTHONY HOSPITAL,
*Plaintiff-Appellant*,

v.

THERESA EAGLESON, in her official capacity as Director of the
Illinois Department of Healthcare and Family Services,
*Defendant-Appellee.*

———————————————

On Remand from the Supreme Court of the United States

———————————————

**SAINT ANTHONY HOSPITAL'S SUPPLEMENTAL BRIEF
PURSUANT TO COURT'S ORDER OF OCTOBER 16, 2023**

———————————————

Michael L. Shakman
Edward W. Feldman
William J. Katt
Mary Eileen Cunniff Wells
MILLER SHAKMAN LEVINE & FELDMAN LLP
30 West Monroe, Suite 1900
Chicago, Illinois 60603
Tel: (312) 263-3700
mlshak@aol.com
efeldman@millershakman.com
wkatt@millershakman.com
mwells@millershakman.com

*Counsel for Saint Anthony Hospital*

# **TABLE OF CONTENTS**

Table of Authorities ....................................................................................... ii

Introduction .................................................................................................. 1

Issues Discussed in this Supplemental Brief ............................................... 2

Background and Standard of Review............................................................ 3

The Original Ruling Correctly Upheld the Timely Payment Claim............ 3

    A. The Standard for Determining if *Blessing* Has Been Overruled ..................... 4

    B. The Original Ruling Is Consistent with *Talevski* ............................... 6

    C. HFS's Description of the Original Ruling Is
       Incomplete and Misleading.............................................................. 11

    D. The Original Ruling Was Correct that an Individual
       Right to Sue Is Not Incompatible with a Statutory Remedy .......... 20

Conclusion .................................................................................................. 26

Certificate of Compliance

Certificate of Filing and Service

# TABLE OF AUTHORITIES

## Cases

*Arlington Central School District Board of Education v. Murphy*,
    548 U.S. 291 (2006) .................................................................................................. 18

*Blessing v. Freestone*,
    520 U.S. 329 (1997) ............................................................................................ *passim*

*City of Rancho Palos Verdes, Cal. v. Abrams*,
    544 U.S. 113 (2005) .................................................................................................... 5

*Domino's Pizza, Inc. v. McDonald*,
    546 U.S. 470 (2006) .................................................................................................... 5

*Geinosky v. City of Chicago*,
    675 F.3d 743 (7th Cir. 2012) .................................................................................. 16

*Gonzaga University v. Doe*,
    536 U.S. 273 (2002) ............................................................................................ *passim*

*Graham County Soil and Water Conservation District vs.*
    *United States ex rel. Wilson*, 545 U.S. 409 (2005) .......................................... 16, 17

*Health and Hospital Corporation of Marion County v. Talevski*,
    599 U.S. 166 (2023) ............................................................................................ *passim*

*Jackson v. Seifried*,
    No. CV2017410GCJBD,
    2023 WL 4627815 (D.N.J. Jul. 19, 2023) ................................................................ 5

*O.B. v. Norwood*,
    838 F.3d 837 (7th Cir. 2016) .............................................................................. 19, 22

*Olson v. Paine, Webber, Jackson & Curtis, Inc.*,
    806 F.2d 731 (7th Cir. 1986) .................................................................................... 6

*Pennhurst State School & Hospital v. Halderman*,
    451 U.S. 1 (1981) ................................................................................................ 17, 18

*Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't of Health*
    699 F.3d 962 (7th Cir. 2012) .................................................................................... 7

*Saint Anthony Hospital v. Eagleson,*
   40 F.4th 492 (7th Cir. 2022)............................................................ *passim*

*Talevski v. Health & Hospital Corp. of Marion County,*
   6 F.4th 713 (7th Cir. 2021) ............................................ 7, 10, 26

*Turner v. Rogers*,
   564 U.S. 431 (2011) .................................................................. 5

*United States v. Freestone,*
   No. 8:23-CR-25-VMC-AEP,
   2023 WL 4824481 (M.D. Fla. Jul. 27, 2023) ................................ 5

*Vega v. Tekoh,*
   597 U.S. __, 142 S.Ct. 2095 (2022) ......................................... 5

**Statutes**

18 U.S.C. § 241 ............................................................................ 5

42 U.S.C. § 1396a(a)(8) ......................................................... 2, 3

42 U.S.C. § 1396a(a)(37)(A) ................................................... 12

42 U.S.C. § 1396n(c)(2)(A) ....................................................... 5

42 U.S.C. § 1396u-2(c)(2)(A)(i) ............................................ 22

42 U.S.C. § 1396u-2(e) ......................................................... 24

42 U.S.C. § 1396u-2(f) ..................................................... *passim*

42 U.S.C. § 1396u-2(h)(2)(B) .............................................. 18

42 U.S.C. § 1983 ............................................................. *passim*

705 ILCS 505/8(b) ................................................................ 23

American Recovery and Reinvestment Act of 2009,
   Pub. L. No. 111-5, 123 Stat. 115, § 5006(d) (2009) ..................... 13

## Introduction

The Court's Order of October 16, 2023, directed Saint Anthony Hospital ("Saint Anthony" or the "Hospital") to "file a supplemental brief" to address "the appropriate disposition of this case at this point." (Dkt. 90.)  This Court should rule as the majority did in July 2022 (the "Original Ruling") (Dkt. 60) finding: (1) an individual right to sue Theresa Eagleson in her official capacity as director of the Illinois Department of Healthcare and Family Services ("HFS") to enforce the timely payment requirements of 42 U.S.C. § 1396u-2(f) (the "Timely Payment Provision"), and (2) that Saint Anthony should be permitted to file its Supplemental Complaint in the district court (as it has done in the interim).  As shown below, *Health and Hospital Corporation of Marion County v. Talevski,* 599 U.S. 166 (2023) ("*Talevski*") affects neither the outcome of the Original Ruling nor the rationale on which it was based.

In view of the extensive prior briefing and prior opinions of the panel, plus the parties' Rule 54 briefing (the "Statements"), this Supplemental Brief focuses on the Original Ruling, and the impact (or not) on the Original Ruling of *Talevski*.  As directed by the Court, we do not address issues of arbitrability, except to the extent necessary to address arguments by HFS concerning the asserted incompatibility of an individual right to sue HFS with the contractual rights upon which many of HFS's arguments rely.  We focus on HFS's Rule 54 Statement (Dkt. 87) because HFS asked for this supplemental briefing.  We assume, therefore, that the arguments in its Statement are arguments on which it will rely in this round of briefing.  We refer to

prior briefing where appropriate to avoid repetition, and use the same terms and abbreviations used in Saint Anthony's Statement (Dkt. 89), except we refer to the Supreme Court's *Talevski* decision as "*Talevski*" and not as "*Talevski II*."

### Issues Discussed in this Supplemental Brief

Only one issue is in dispute for purposes of this Supplemental Brief: Whether *Talevski* should change the Original Ruling that Saint Anthony is entitled to bring an individual claim against HFS to enforce the Timely Payment Provision of the Medicaid laws, 42 U.S.C. § 1396u-2(f). Subsumed within this issue is whether, and to what extent, the Original Ruling's application of the three factors identified in *Blessing v. Freestone,* 520 U.S. 329 (1997), remains relevant. As shown below, *Talevski* does not change the outcome or reasoning of the Original Ruling, and *Blessing* remains relevant. The Original Ruling's analysis of the Timely Payment Provision should be reinstated, with modifications to acknowledge *Talevski*'s confirmation of the legal principles upon which the Original Ruling was based.

The Original Ruling also decided that Saint Anthony should be permitted to file its Supplemental Complaint in the district court and affirmed dismissal of Saint Anthony's claim brought under 42 U.S.C. § 1396a(a)(8). Those issues were not part of HFS's Petition for Certiorari, the parties did not discuss them in their Statements, nor are they discussed in *Talevski*. Therefore, they are not addressed in this brief. The portions of the Original Ruling on those issues should be reinstated without substantial revision. (Saint Anthony believes its claim under Section 1396a(a)(8) was properly stated, but it has not sought further review of the issue. Thus, like the

Court's unchallenged ruling granting Saint Anthony leave to file its Supplemental Complaint, the Section 1396a(a)(8) ruling also should remain.)

## Background and Standard of Review

The background to this case after remand from the Supreme Court—including the nature of the case and the prior rulings—is described in Saint Anthony's Statement at 1-3. The standard of review after a court of appeals issues a decision that the Supreme Court vacates, and remands for further proceedings in light of a subsequent Supreme Court decision, is described in Saint Anthony's Statement at 3.

## The Original Ruling Correctly Upheld the Timely Payment Claim

In a detailed analysis that spans many pages of the Federal Reporter, the Original Ruling carefully considered and applied the relevant Supreme Court and Seventh Circuit case law and statutory language. Based on that review, it concluded that when Congress enacted the Timely Payment Provision it intended that individual Medicaid providers like Saint Anthony be entitled to sue state agencies entrusted with implementing Medicaid to require them to remedy systemic violations of that requirement. *See Saint Anthony Hosp. v. Eagleson,* 40 F.4th 492, 505-13 (7th Cir. 2022). That analysis remains correct. Whether the Court applies *Blessing* or *Talevski*, or both, the result is the same—Saint Anthony is entitled to sue HFS to require it to address systemic non-compliance with the Timely Payment Provision. The Original Ruling's extensive reliance on *Gonzaga University v. Doe,* 536 U.S. 273 (2002), was also correct, and remains appropriate after *Talevski.*

3

A.    **The Standard for Determining if**
      ***Blessing*** **Has Been Overruled.**

Before we address the relevance of *Talevski* to the Original Ruling, a preliminary issue needs to be addressed.  HFS argued in its Statement that the Original Ruling "applied *Blessing*, not *Gonzaga*," and "[t]hat alone was error."  HFS Statement at 5.  Saint Anthony disagrees.

First, HFS's predicate is incorrect.  The Original Ruling *did* apply *Gonzaga*.  It applied both precedents and did not discard one in favor of the other.  40 F.4th at 502-03.  It cited *Gonzaga* over ten times and discussed in detail its application to the Timely Payment Provision.  *See id.* at 506 (regarding the first *Blessing* factor, contrasting the statutory language in *Gonzaga* with that at issue in this case).  The Original Ruling concluded (*id.* at 507):

> Because the statutory provisions [in *Gonzaga*] did not have an individualized focus, they failed *Blessing* factor one: "[The] provisions further speak only in terms of institutional policy and practice, not individual instances of disclosure. Therefore, as in *Blessing*, they have an 'aggregate' focus, they are not concerned with 'whether the needs of any particular person have been satisfied,' and they cannot 'give rise to individual rights.'" *Gonzaga*, 536 U.S. at 287-88, 122 S.Ct. 2268 (internal citation omitted), quoting *Blessing*, 520 U.S. at 343-44, 117 S.Ct. 1353.

Second, neither *Talevski* nor any other Supreme Court decision has overruled *Blessing*, or said that it is no longer good law.  Nor has the Supreme Court stated that courts should disregard *Blessing*.

Only HFS appears to believe that *Talevski* overruled *Blessing*—apparently by implication, since the majority and concurring opinions contain no express statement overruling or even criticizing it.  Since June 2002, when the Supreme Court decided

4

*Gonzaga*, it has cited *Blessing* in five other majority or plurality opinions, including *Talevski*, without suggesting it is not good law. Two Supreme Court opinions cite *Blessing* on grounds not relevant here.[1] Two others, and now *Talevski* as well, cite *Blessing* for the principle—also stated in the Original Ruling—that no individual right can be enforced if Congress included in the statute its own incompatible enforcement scheme. *See City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120 (2005); *Vega v. Tekoh*, 597 U.S. __, 142 S.Ct. 2095, 2106 n.6 (2022) (quoting *City of Rancho Palos Verdes*, in turn quoting *Blessing*). Two federal district court decisions decided since *Talevski* cite both *Blessing* and *Talevski* without any suggestion that *Blessing* is no longer good law.[2]

This Court has addressed the standard for determining whether one case overrules another by implication: it must follow a Supreme Court decision unless "the

---

[1]     *See Turner v. Rogers*, 564 U.S. 431, 444 (2011) and *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 n.3 (2006)

[2]     *Jackson v. Seifried*, No. CV2017410GCJBD, 2023 WL 4627815, at *4 (D.N.J. Jul. 19, 2023), found that another Medicaid provision, 42 U.S.C. § 1396n(c)(2)(A), confers an individual right to sue. It relied upon a 2020 Sixth Circuit decision applying the *Blessing* factors to this same provision and finding an individual right. *Jackson* also cited *Talevski* as finding an individual right to sue. The opinion contained no suggestion that *Talevski* changed the *Blessing* analysis.

*United States v. Freestone*, No. 8:23-CR-25-VMC-AEP, 2023 WL 4824481, at *1 (M.D. Fla. Jul. 27, 2023), applies the *Blessing* factors, but not in the context of a § 1983 action. *Freestone* was a criminal case alleging violation of 18 U.S.C. § 241, which makes it a crime to conspire to prevent someone from exercising a federal right. The court applied the *Blessing* factors to find that the federal statute at issue conferred an individual right. Therefore, the indictment sufficiently stated a charge of conspiracy against rights under 18 U.S.C. § 241. The opinion also cited *Talevski*.

lower court is certain or almost certain that the decision or doctrine would be rejected by the higher court if a case presenting the issue came before it." *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 741 (7th Cir. 1986). This Court added:

> This is a high standard and will rarely be met. Any looser standard, however, would unsettle the law. The expansion of the federal courts makes it more rather than less important that lower courts respect the authority of higher ones in order to maintain a minimum of coherence in the law.

*Id.* *Talevski* presented the opportunity for the Supreme Court to overrule *Blessing*. Indeed, the dissent by Justice Alito, joined only by Justice Thomas, urged such a conclusion. *See* 599 U.S. at 230-31. The seven other Justices declined the invitation. Thus, under the controlling law, it is proper for this Court to continue to apply *Blessing*. As Saint Anthony shows below, however, whether this Court applies *Blessing,* or only *Talevski*, the result is the same: Saint Anthony has the right to sue HFS to enforce the Timely Payment Provision.

## B. The Original Ruling Is Consistent with *Talevski*.

A comparison of how the Original Ruling applied the three *Blessing* factors with the reasoning of the Supreme Court in *Talevski* makes clear that there is no inconsistency. The Original Ruling correctly described the three *Blessing* factors, which might be summarized as plaintiff benefit, clear right, and binding obligation:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

6

40 F.4th at 503 (quoting *Talevski v. Health & Hospital Corp. of Marion County*, 6 F.4th 713, 717 (7th Cir. 2021)).  In *Talevski* the Supreme Court did not reject the relevance of any of the three.

*Focus on individual rights.*  The Supreme Court in *Talevski* stated that the statutory provisions must be "'phrased in terms of the persons benefited' and contain[] 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'"  599 U.S at 183 (citing *Gonzaga*, 536 U.S. at 284, 287).  The Court's analysis of whether the statute at issue did so was extensive.  *See, e.g.*, 599 U.S. at 185 ("[T]he statute's caveats remain focused on individual residents" and "[t]he exceptions to the advance-notice requirement, too, turn (*inter alia*) on the '*resident's* health,' [and] the '*resident's* urgent medical needs.'").

There is no inconsistency between these statements in *Talevski* and the application of the first *Blessing* factor in the Original Ruling.  The Original Ruling described the task at hand in terms nearly identical to *Talevski*:

> Congress must have "*intended to create a federal right*," [citation], and "the statute 'must be phrased in terms of the persons benefited' with 'an *unmistakable focus* on the benefited class.'" [citation]

40 F.4th at 502-03 (quoting *Gonzaga*, 536 U.S. at 283 and *Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't of Health*, 699 F.3d 962, 973 (7th Cir. 2012)).  Then, based on a detailed analysis of Section u-2(f)'s text under *Blessing*'s first factor, this Court concluded that "Congress intended section 1396u-2(f) to benefit providers like Saint Anthony and . . . intended that benefit to be a right, as distinct from a generalized entitlement."  40 F.4th at 505.  Whether labelled as under

*Blessing*'s first factor, *Gonzaga*, *Talevski*, or all three, the analysis supporting the Original Ruling's conclusion remains correct.

The standard announced in *Talevski/Gonzaga* (the statutory provisions must be "'phrased in terms of the persons benefited' and contain[] 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'" *Talevski*, 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 284, 287), is best understood as reformulating *Blessing* factors 1-2 into a single statement that captures the plaintiff benefit and clear right factors. The *Talevski/Gonzaga* reformulation clarifies that the *Blessing* standard requires the court to find that Congress granted a "right" and not just a "benefit" since, as *Gonzaga* noted, some courts had been "confus[ed]" about the reference to "benefit[s]" in *Blessing* (even though *Blessing* also says Congress must have created "rights" to generate an individual right to sue). *Gonzaga*, 536 U.S. at 282-83. *Gonzaga* resolved this "confusion" by "reject[ing] the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." *Id.* at 283. The Original Ruling correctly applied the standard stated in *Gonzaga*, using the *Blessing* factors "[t]o aid in this analysis." 40 F.4th at 503.

*Not vague or amorphous.* *Talevski* did not use the phrase "vague or amorphous" with regard to the statute at issue. But its description of the statutory language made clear that the Court applied the requirement:

> The first [statutory provision at issue] requires nursing facilities to "protect and promote" residents' "right to be free from . . . any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat the resident's medical symptoms." [ . . . .] The

> second [statutory requirement] . . . tells nursing facilities that they "must not transfer or discharge [a] resident" unless certain enumerated preconditions, including advance notice of such a transfer or discharge, are met.

*Talevski*, 599 U.S. at 181-82.

> [The statutory] provision tells nursing facilities that they must not transfer or discharge a *resident* unless certain preconditions are met, including advance notice of the transfer or discharge to the resident and his or her family.

*Id.* at 185 (cleaned up; emphasis in original).

> The unnecessary-restraint and predischarge-notice provisions use clear rights-creating language, speak in terms of the persons benefited, and have an unmistakable focus on the benefited class.

*Id.* at 186 (cleaned up). Thus, by reciting the specific and detailed provisions of the statute, *Talevski* applied the functional equivalent of the not-vague-or-amorphous requirement of *Blessing*.

*Binding obligation.* Although the claim in *Talevski* was against a private nursing home and not directly against the State, the Supreme Court still confirmed that the nursing home's obligations under the statute were binding and mandatory: "these two provisions also establish who it is that *must* respect and honor these statutory rights; namely, the Medicaid-participant nursing homes in which these residents reside." 599 U.S. at 185 (emphasis added). *See also id.* at 181 (quoting statutory text: "*[r]equirements* relating to residents' rights") (emphasis added); *id.* at 182 (same: "*must* not transfer or discharge") (emphasis added). The claim against the nursing home in *Talevski* was brought under § 1983 on the ground that the

nursing home was an agent of the State. There was nothing in *Talevski* to indicate any disagreement with this element of prior § 1983 case law.

This Court relied on the same *Blessing*-factor analysis in deciding the underlying Court of Appeals opinion that the Supreme Court affirmed in *Talevski*. *See* 6 F.4th at 717-20. Nowhere does *Talevski* hold or even suggest that this Court erred in that case by applying the three *Blessing* factors. Nor does it imply that this Court erred by doing the same thing in the Original Ruling here.

Moreover, application of the three *Blessing* factors was only the beginning of the Original Ruling's analysis. Like *Talevski*, the Original Ruling also examined the statute to determine whether it contained a remedial scheme incompatible with an individual right to sue. This was entirely consistent with *Talevski* and other precedent. The Original Ruling stated:

> If these three [*Blessing*] factors are satisfied, the right is presumptively enforceable under section 1983. The defendant may overcome this presumption by demonstrating that Congress shut the door to private enforcement. Congress may foreclose a remedy under section 1983 either expressly, through specific evidence from the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.

40 F.4th at 503 (cleaned up). That statement is essentially the same as these statements in *Talevski:*

> Even if a statutory provision unambiguously secures rights, a defendant may defeat the presumption by demonstrating that Congress did not intend that § 1983 be available to enforce those rights.

* * *

> [T]he *sine qua non* of a finding that Congress implicitly intended to preclude a private right of action under § 1983 is incompatibility

10

between enforcement under § 1983 and the enforcement scheme that Congress has enacted.

599 U.S. at 186-87 (cleaned up). As shown in Section D, below, the Original Ruling correctly applied the law to conclude that Congress did not create a comprehensive enforcement scheme incompatible with individual enforcement of the Timely Payment Provision. That ruling is fully consistent with and supported by *Talevski*.

## C. HFS's Description of the Original Ruling Is Incomplete and Misleading.

Although HFS's Statement strives to find an incompatibility between the Original Ruling and the prior case law, which *Talevski* followed, there is none. That is hardly surprising. HFS's application of *Talevski* to the Original Ruling mirrors its prior briefing on appeal and its unsuccessful rehearing petition. HFS's Statement deployed *Talevski* for a second attempt at rehearing, even though *Talevski* did not alter the legal landscape. Although this requires retreading old ground, we address HFS's arguments.

HFS's Statement largely ignores what the Original Ruling actually said. In this Section, we discuss HFS's incomplete version, and what the actual Original Ruling said in finding that the Timely Payment Provision is presumptively enforceable under § 1983. In Section D below, we address HFS's incomplete and misleading discussion of the Original Ruling's finding that Congress did not foreclose a remedy under § 1983.

HFS never discusses most of the specific statutory language that the Original Ruling carefully analyzed in reaching its conclusion that Congress intended that

11

providers could enforce the Timely Payment Provision against HFS.  Instead, HFS asserts that the statutory language at issue in *Talevski* was clear, but the Timely Payment Provision is not—with no reference to most of the statutory language the Original Ruling analyzed.  HFS Statement at 7.  Indeed, HFS refers to the statutory language as having a "textual silence concerning the duty" to pay providers on time. *Id*. at 9.  If HFS thinks there is a "textual silence" it could only be because it is not listening.  The Original Ruling focused on each of the following components of the statute:

First, the Original Ruling focused on the actual language of Section u-2(f), and other sections to which it refers, to conclude that providers were the intended beneficiaries of the Section.  It focused on language whose plain meaning HFS ignores, and that HFS's Statement never mentions.  According to the Original Ruling, "[t]he text requires MCOs to contract that they <u>shall make payment to health care providers . . . on a timely basis</u>."  40 F.4th at 505 (underscoring added).  The underscored language is the first and most important element of the statute.  It is not found in HFS's Statement.

Second, the Original Ruling noted that Section u-2(f) "cross-references section 1396a(a)(37)(A), which requires that states pay 'practitioners' on the 30/90 pay schedule."  40 F.4th at 505.  When Section u-2(f) states that payment to providers shall be made "on a timely basis consistent with the claims payment procedures described in section 1396a(a)(37)(A) . . ." the Original Ruling concluded that Congress meant to apply the 30/90-day schedule to "providers," not simply to a subset,

"practitioners."  *Id*.  HFS had argued that the Timely Payment Provision only applied to practitioners.  The Original Ruling rejected that argument.  *Id*. (HFS appears to have abandoned the argument, as it is not mentioned in its Statement.)

Third, the Original Ruling gave weight to an additional factor HFS does not mention—Section u-2(f) was part of the Balanced Budget Act of 1997, in a section titled "Assuring Timeliness of Provider Payments."  The Original Ruling noted that this language "signals that Congress intended section 1396u-2(f) to assure, i.e., to guarantee, timely payment to providers."  40 F.4th at 505-06.

Fourth, another part of the statutory language that HFS never mentions, but that the Original Ruling found relevant, is a portion of the American Recovery and Reinvestment Act of 2009.  *See* Pub. L. No. 111-5, 123 Stat. 115, § 5006(d) (2009). The Original Ruling found that Act relevant to Congress' intention expressed in Section u-2(f) because Congress—in the body of the enacted statutory text—explained what it meant when it enacted Section u-2(f) twelve years earlier.  The 2009 Act provided special rules for "Indian enrollees, Indian health care providers, and Indian managed care entities."  It cross-referenced Section u-2(f) and described that Section as the "rule for prompt payment of providers."  The Original Ruling quoted this language.  40 F.4th at 506.  HFS ignores it—not surprisingly, because there is no answer to its persuasive force.  Rarely does Congress tell you in a later enactment what it meant by a prior enactment.

Fifth, the Original Ruling explained that Section u-2(f) states that the 30/90-day payment requirement shall apply "unless the health care provider and the

13

[Managed Care] organization agree to an alternate payment schedule." 40 F.4th at 507. Based on this language, the Original Ruling reasoned that "the focus [of this provision] is on the individual provider" and "not on whether MCOs in the aggregate substantially comply with the timely payment requirement." *Id.*

Sixth, the Original Ruling focused on separate provisions of the Medicaid Act that impose reporting and oversight obligations on the States, and describe actions that the States can take in the case of non-compliance by MCOs. The Original Ruling concluded that "[t]he more coherent reading of the statute as a whole is that Congress intended the State to engage in these reporting and oversight responsibilities, and if it becomes evident that MCOs are systematically not paying providers on a timely basis, then the State would have an obligation to act under section 1396u-2(f) to secure providers' rights." *Id.* at 510.

Although HFS ignores most of these provisions that the Original Ruling considered, it does address and misreads the fifth one. HFS claims that this provider-specific exemption from the 30/90-day payment requirements is "no different from the individual consent exception to schools' privacy obligations under the statute at issue in *Gonzaga,* which the Court held was insufficient to confer individual rights." HFS Statement at 11. The Original Ruling addressed this issue at length—a discussion to which HFS makes no reference. In that discussion, the Original Ruling explained that the Court in *Gonzaga* had focused on the fact that "the Secretary of Education could take away funds only if the university did not *substantially* comply with the statutory requirements. This fact contributed to the understanding that the

focus was on systemwide performance rather than individual instances of improper disclosure." 40 F.4th at 507. The Original Ruling went on to explain and distinguish the Timely Payment Provision:

> The opposite is true here. Section 1396u-2(f) is concerned with whether the needs of particular persons and entities—providers like Saint Anthony—have been satisfied. The statutory text specifies that the State "shall provide" that MCOs "shall make payment to health care providers . . . on a timely basis." 42 U.S.C. § 1396u-2(f). The focus of section 1396u-2(f) is not "two steps removed" from the interest of providers. Its focus is directly on the interest Saint Anthony asserts here: ensuring that providers receive timely payment from MCOs. And the provision is not concerned only with whether MCOs in the aggregate pay providers on the 30/90 pay schedule, but whether *individual* providers are receiving the payments in the timeframe promised.

40 F.4th at 507. HFS's Statement simply ignores this discussion.

Finally, as to the sixth component of the statutory language discussed by the Original Ruling—the monitoring and reporting obligations that the statute imposes upon the State—HFS argues that they are consistent with its view that all that Congress intended was that States include the Timely Payment Provision in the State's contracts with the MCOs, not that HFS do anything to enforce the requirement. HFS Statement at 11.

As the Original Ruling noted, "[i]n HFS's view, nothing in section 1396u-2(f) requires the State itself do anything more to ensure prompt payment." 40 F.4th at 508. HFS does not dispute that description of its position, then and now. Instead, it says that HFS *might* do something if it chooses to, and refers to the fact that HFS put CountyCare, one of the MCOs, on an improvement plan after the MCO diverted funds intended to pay providers to cover Cook County budget gaps. HFS Statement at 17.

HFS does not mention that it only took action after CMS, the federal agency with oversight for Medicaid, became involved.[3]  HFS does not explain what is wrong with the Original Ruling's reasoning that the more coherent view of the monitoring and data-gathering duties that Congress imposed on HFS is that they evidence Congress' intent that HFS has the duty to do something with the data after learning from them that MCOs are not complying with the Timely Payment Provision.

HFS also incorrectly asserts that because Congress required inclusion of the Timely Payment Provision in the State Medicaid Plan that HFS must promulgate under federal law, Congress' intention is ambiguous, and cannot give rise to individual rights.  HFS Statement at 8.  The fact that Congress required inclusion of the Timely Payment Provision in the State Plan does not create ambiguity, because inclusion in the Plan is entirely consistent with individual enforcement, for all the reasons discussed by the Original Ruling and summarized above and in the next section.  Indeed, it would have been strange if Congress, which enacted a clear timely payment policy to grant providers rights, had not also required the State to include that provision in the State's Medicaid Plan.

HFS cites *Graham County Soil & Water Conservation District vs. United States ex rel. Wilson*, 545 U.S. 409, 419 (2005), in support of its erroneous argument that "a court may find a statute unambiguous only if no other meaning is 'plausible.'"  HFS Statement at 8.  HFS's assertion is not the law, and is definitely not what *Graham*

---

[3] *See* R86-1 at Exhibits I and J-2, which may be considered because they illustrate the allegations in the Complaint.  *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).  *Compare* R86-1 at Exhibits I and J-2 *with* R1:¶¶51, 72, 75.

*County* said or suggested.  It did not purport to set any litmus test for determining whether or not a statute was ambiguous, let alone the test HFS asserts.  It dealt with how to interpret a statute of limitations, and began its analysis with its conclusion that the provision was ambiguous.  *See* 545 U.S. at 415 ("Section 3731(b)(1) is ambiguous, rather than clear[.]").  Nor did the Court say that a statute is unambiguous when only one reading is plausible.  Statutes may be subject to more than one plausible interpretation, but the rules of construction permit a court to determine the meaning to be given to the statutory language.  That is what occurred in *Graham County,* as the Court stated: "where, as the case is here, there are two plausible constructions of a statute of limitations, we should adopt the construction that starts the time limit running when the cause of action . . . accrues."  *Id.* at 419.

Moreover, the Original Ruling considered and rejected HFS's ambiguity argument.  It first rejected HFS's reading of the statute, finding that, in light of statutory text it discussed at length, Section u-2(f)'s "mandatory language, coupled with [HFS's] additional oversight and reporting responsibilities, supports the reading that section 1396u-2(f) *must be* doing more than imposing merely the formality of contract language."  40 F.4th at 510 (emphasis added).  The Original Ruling then turned to the "ambiguity" argument, explaining that *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 17 (1981), "taught that Congress can impose conditions on grants of federal money only if it does so 'unambiguously' and 'with a clear voice.'"  40 F.4th at 510.  That means that "States cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.'"  *Id.* at

510 (quoting *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006), in turn quoting *Pennhurst*, 451 U.S. at 17). The required clarity must be viewed "'from the perspective of a state official . . . deciding whether the State should accept [Medicaid] funds and the obligations that go with those funds.'" 40 F.4th at 511 (quoting *Arlington Cent.*, 548 U.S. at 296). Applying that unchallenged rule of law to the text of Section u-2(f), the Original Ruling held:

> Such an official would not reasonably have concluded that Congress intended that the "rule for prompt payment of providers" would be only a proverbial paper tiger. See § 1396u-2(h)(2)(B) (describing section 1396u-2(f) as the "rule for prompt payment of providers"). That position *conflicts* with the State's oversight and reporting obligations and its enforcement duties under the Medicaid Act.

40 F.4th at 511 (emphasis added).

Thus, the Original Ruling accurately followed *Pennhurst* and its progeny to find that HFS's alternative interpretation "conflicts" with the statutory scheme. *Id.* That the Original Ruling did not use the specific words "unambiguous" or "not plausible" does not change its clear holding.

HFS also misstates the remedies that the Original Ruling indicated might be appropriate at a later stage of this case. HFS asserts that the Original Ruling "give[s] the plaintiff the right to force the State to take enforcement action against someone else." HFS Statement at 11. It added that "courts are also very reluctant to interpret statutes to allow private control over discretionary enforcement decisions by public officials." *Id.* at 12. But the Original Ruling did not authorize "private control over discretionary enforcement" or anything like it. And the private actor here, or in any like case, controls nothing. It is a petitioner, not a dictator. Saint Anthony merely

has the right to petition Article III judges to enforce a statutory provision with remedies the law permits, subject to equitable discretion and appellate review. That basic reality underlies what the Original Ruling actually said with regard to such relief, which HFS disregards—that it was very doubtful the district court would be entitled to force HFS to cancel an MCO's contract with the State. 40 F.4th at 511 ("we doubt the district court has authority to impose" that remedy). As for HFS's other worst-case imaginings, the Court said that they "can be addressed if and when it [the need to do so] actually arises and matters." *Id.*

Indeed, the Original Ruling made clear that HFS retained discretion, but not the discretion to do nothing whatsoever in the face of systemic violations of the Timely Payment Provision:

> HFS can take other steps at the system level to address chronic late and/or short payments by MCOs. Those actions would neither force the State to cancel an MCO contract nor turn the district court into a claims processor. If Saint Anthony can prove its claims of systemic delay and/or underpayment, we are confident that the district court could craft injunctive relief to require HFS to do something to take effective action.

40 F.4th at 512. The Original Ruling supported this conclusion by citing a prior decision requiring HFS to take action, *O.B. v. Norwood*, 838 F.3d 837, 842 (7th Cir. 2016). There the Court stated, in affirming a preliminary injunction, that the injunction "should be understood simply as a first cut: as insisting that the State do something rather than nothing to provide in-home nursing care for these children." *Id*. HFS does not mention *O.B.*

**D.     The Original Ruling Was Correct that
          an Individual Right to Sue Is Not
          Incompatible with a Statutory Remedy.**

HFS argues that even if Congress intended that the Timely Payment Provision provide individual rights, "enforcement would be inconsistent with the contract-based enforcement scheme that section u-2(f) expressly establishes." HFS Statement at 12. That scheme, according to HFS, consists of HFS's contract right to direct MCOs to enforce compliance, and the providers' right to sue the MCOs, or bring arbitrations against those with arbitration agreements. *Id*. at 14.

Before discussing why HFS is wrong, it bears repeating that *Talevski* did not change the law regarding this factor, which has long been part of holdings in the lines of cases in the Supreme Court and this Court. HFS's arguments are, in reality, a renewed petition for rehearing.

And they remain wrong for reasons the Original Ruling explained in detail, but with which HFS does not come to grips. As the Court explained in *Talevski,* applying precedents it did not alter and that this Court applied in the Original Ruling, when a court reads a statute as granting individual rights, it must also determine whether Congress created its own enforcement scheme that is incompatible with individual enforcement:

> Even if a statutory provision unambiguously secures rights, a defendant may defeat the presumption by demonstrating that Congress did not intend that § 1983 be available to enforce those rights. For evidence of such intent, we have looked to the statute creating the right. A statute could, of course, expressly forbid § 1983's use. Absent such a sign, a defendant must show that Congress issued the same command implicitly, by creating a comprehensive enforcement scheme that is

incompatible with individual enforcement under § 1983. Only the latter path is at issue here.

599 U.S. at 186 (cleaned up).  The Original Ruling applied the same standard.  It stated:

> HFS can rebut this presumption [that Congress intended to allow individual enforcement] by "showing that Congress specifically foreclosed a remedy under § 1983 . . . expressly, through specific evidence from the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983[.]" *Id.* (alteration and omission in original), quoting *Gonzaga*, 536 U.S. at 284 n.4, 122 S.Ct. 2268. HFS has not identified any express language in the Medicaid Act foreclosing private rights enforcement. HFS relies instead on the implicit approach, which is a "difficult showing." *Blessing*, 520 U.S. at 346, 117 S.Ct. 1353.

40 F.4th at 514.

The Original Ruling has already considered and rejected HFS's argument that providers could sue MCOs to obtain timely payment, finding that remedy was not a "carefully tailored scheme" in the statute that foreclosed private enforcement. *Id.* It cited *Gonzaga* for that standard: "we are not persuaded that Congress, implicitly through the contractual model, created "a comprehensive enforcement scheme that is incompatible with individual enforcement under [§ 1983]." *Id.* at 515.

HFS argues that this conclusion is wrong for several reasons.  Each was correctly rejected by the Original Ruling, except for one, which HFS had not raised, and it fails as well.

(i)    *A remedy does not eliminate HFS discretion.*  HFS argues that "giving providers a right to force States to ensure timely payments by MCOs would eliminate [HFS's] discretion, and thus defeat a central aspect of the enforcement scheme based on contract rights that Congress specifically established." HFS Statement at 17.  We

have already discussed this argument. *See supra* at 18-19. Providers cannot "force" anything, and the Original Ruling concluded that HFS retains discretion, but not the discretion it claims—to do nothing whatsoever in the face of systemic violations of the Timely Payment Provision. A court can require it to do something, while allowing HFS appropriate discretion, as courts often do in fashioning remedies against governmental bodies. *E.g.*, *O.B.*, 838 F.3d at 842.

(ii)     *A remedy would not require individual proof of breaches of the Timely Payment Provision.* HFS argues that any § 1983 claim by a provider against a state under Section u-2(f) would depend on proof that an MCO breached the timely payment provision in its contract with the provider. HFS Statement at 18. Not so. As the Original Ruling stated, Congress requires HFS to gather evidence of MCO performance and monitor that performance. 40 F.4th at 509. It is required to gather the very information needed to determine compliance with the Timely Payment Provision: "Section 1396u-2(c)(2)(A)(i) further specifies that a state's contract with an MCO must provide for an 'annual (as appropriate) external independent review' of the 'timeliness' of MCO 'services for which the organization is responsible,' including payments." *Id.* The Medicaid law does not require HFS to engage in individual adjudications with MCOs to determine individual breaches of duty. The MCOs are obligated to report the relevant data to HFS and HFS is obligated to audit and monitor MCO performance.

(iii)     *The district court would not be enmeshed in hundreds of individual disputes.* Relatedly, HFS argues that the district court would have to "adjudicate the

breach-of-contract claim between the provider and the MCO, involving potentially hundreds of sub-disputes." HFS Statement at 18. This argument is wrong for the same reasons as the previous one, and the Original Ruling correctly rejected it. It agreed that "requiring the district court to adjudicate issues at the claim-by-claim level, would strain judicial resources and seem to conflict with the arbitration clauses in the contracts between the MCOs and Saint Anthony." 40 F.4th at 511-12. But it concluded, correctly, that such claim-by-claim adjudication would not be necessary to take systemic remedial actions:

> These two limits on remedies in a section 1983 action do not persuade us, however, that we should affirm dismissal on the theory that the State has no duty at all to ensure timely payment under section 1396u-2(f). HFS can take other steps at the system level to address chronic late and/or short payments by MCOs. Those actions would neither force the State to cancel an MCO contract nor turn the district court into a claims processor.

*Id*. at 512.

(iv)     *Arbitration clauses do not overcome the presumption.* HFS argues that if an MCO had an arbitration agreement with the provider "the district court could not resolve the provider's section u-2(f) claim in derogation of the MCO's arbitration rights." HFS Statement at 19. But the steps that HFS can take "at the system level to address chronic late and/or short payments by MCOs," 40 F.4th at 512, are not subject to any arbitration agreement between HFS and the MCOs. Indeed, Illinois law prohibits any arbitration agreement between HFS and the MCOs or anyone else, *see* 705 ILCS 505/8(b), so the MCOs have no right or basis to rely on an arbitration limitation if HFS takes actions against them under its discretionary authority. And because HFS can do so without engaging in "claims processor" litigation between

23

providers and MCOs, 40 F.4th at 512, the arbitration agreements found in some (but not all) contracts between providers and MCOs don't come into play.

(v)     *Necessary parties.*     HFS states in passing, for the first time, that the MCOs are necessary parties.  HFS Statement at 18.  HFS has never asked to join the MCOs as necessary parties, nor ever argued—even now—that they cannot be joined or that, if they couldn't, the case cannot proceed in their absence.  Nor does their status under Rule 19 have any bearing on whether Saint Anthony has the right to privately enforce Section u-2(f).  Rather, whether the MCOs are "necessary" parties or not, and whether they are joined or not, Saint Anthony has the right to bring its claims against HFS.  The MCOs do not need to be parties to this lawsuit to generate relief against HFS.

The MCOs all entered into contracts with HFS incorporating their duty under the Medicaid law to provide HFS information to determine whether they are paying providers on a timely basis.  They also knew from the Medicaid law that HFS could take action against them if they did not perform properly—indeed, HFS touts that right, and the Original Ruling focused on one of the relevant provisions: "The Medicaid Act further specifies actions a state can take when an MCO underperforms." 40 F.4th at 509 (citing § 1396u-2(e)).  Thus, as part of the *quid pro quo* for managing the multi-billion-dollar Medicaid payment process, and getting to keep as profit much of what does not get paid to providers, the MCOs agreed to be subject to HFS oversight and direction under federal requirements.  That included their obligations under the Timely Payment Provision.  HFS is not required to join them in this lawsuit

24

or sue them separately to cause their compliance with these obligations. It has other substantial tools short of litigation to generate compliance.

This lawsuit is about HFS's failure to address systemic problems in the MCO system. Those problems can be identified because Saint Anthony can show that it was not paid on a timely basis from its records. If HFS wishes, it can require MCOs to provide their data by request or subpoena. HFS should have (and in any case can obtain) all necessary data from the MCOs under their statutory and contractual duties to HFS. While HFS is entitled to ask MCOs for their views on the need for systemic remedies, no finding in this case that systemic remedies are needed will bind any individual MCO in any separate, individual payment disputes with Saint Anthony. This lawsuit is against HFS to obtain systemic remedies for systemic problems, not to adjudicate individual claims against individual MCOs.

Unable to explain how providers' or HFS's contractual rights against MCOs foreclose individual enforcement under § 1983, HFS mischaracterizes the Original Ruling as incorrectly relying on "the supposed superiority of section 1983 enforcement over the contract rights that section u-2(f) expressly contemplates." HFS Statement at 14. The Original Ruling did not rely on the supposed superiority of § 1983 enforcement. The Original Ruling's only reference to "superior" differs from what HFS suggests:

> It's not immediately obvious that this [contract-based] dispute-resolution system would even be manageable, let alone superior to a systemic solution implemented by HFS. At the very least, we are not persuaded that Congress, implicitly through the contractual model, created "a comprehensive enforcement scheme that is incompatible with

25

individual enforcement under [§ 1983]." *Gonzaga*, 536 U.S. at 285 n.4., 122 S.Ct. 2268.

40 F.4th at 515.

HFS's "superiority" argument misses the principle that this Court applied in the Original Ruling and *Talevski* fully affirmed: Congress must indicate that the alternative remedial scheme is the *exclusive* remedy in order to displace private enforcement. *See Talevski*, 599 U.S. at 187 ("The crucial consideration is whether Congress intended a statute's remedial scheme to be the exclusive avenue through which a plaintiff may assert [his] claims.") (cleaned up); *cf.*, 40 F.4th at 514 ("HFS can rebut this presumption by 'showing that Congress specifically *foreclosed* a remedy under § 1983 . . . expressly, through specific evidence from the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983[.]'") (quoting *Talevski*, 6 F.4th at 720, in turn quoting *Gonzaga*, 536 U.S. at 284 n.4) (emphasis added). Whether or not an alternative remedy is "superior," private enforcement is *not* foreclosed unless Congress intended the alternative remedial scheme be the exclusive remedy.

## Conclusion

The Court should reaffirm the conclusions reached in the Original Ruling. Nothing in *Talevski* altered the law in any way to require, or even suggest, a change in the outcome. Rather, *Talevski* vindicated this Court's rulings in that case—and by implication in this one, since this Court relied on its *Talevski* decision in the Original Ruling.

Saint Anthony should be allowed to pursue its claims for what the Original Ruling accurately described as "systemic failures by MCOs to comply with the 30/90 payment schedule with reasonably transparent payment information."  40 F.4th at 513.

Dated: November 6, 2023

Respectfully submitted,

SAINT ANTHONY HOSPITAL

By: */s/ Michael L. Shakman*

*One of its attorneys*

Michael L. Shakman
Edward W. Feldman
William J. Katt
Mary Eileen Cunniff Wells
MILLER SHAKMAN LEVINE & FELDMAN LLP
30 West Monroe, Suite 1900
Chicago, Illinois 60603
Tel: (312) 263-3700
mlshak@aol.com
efeldman@millershakman.com
wkatt@millershakman.com
mwells@millershakman.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(A) because it contains fewer than 30 pages. This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b) because it has been prepared in a proportionally spaced typeface (12-point Century Schoolbook) using Microsoft Word.

November 6, 2023

/s/ Michael L. Shakman
One of the attorneys for Plaintiff-Appellant
Saint Anthony Hospital

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on November 6, 2023, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system.  All participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.


November 6, 2023                    /s/ Michael L. Shakman
                                   One of the attorneys for Plaintiff-Appellant
                                   Saint Anthony Hospital