**No. 21-2325**

# In the
# United States Court of Appeals
## for the Seventh Circuit

SAINT ANTHONY HOSPITAL,

*Plaintiff-Appellant,*

v.

ELIZABETH M. WHITEHORN, in her official capacity as Director of the Illinois
Department of Healthcare and Family Services,

*Defendant-Appellee,*

and

MERIDIAN HEALTH PLAN OF ILLINOIS, INC., et al.,

*Intervening Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:20-cv-02561.
The Honorable **Steven C. Seeger**, Judge Presiding.

## JOINT PETITION FOR REHEARING WITH A SUGGESTION FOR REHEARING *EN BANC*

STEVEN T. WHITMER
HUGH S. BALSAM
HEIDI L. BRADY
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
(312) 443-0700

*Counsel for Meridian Health Plan of Illinois, Inc.*

KIRSTIN B. IVES
MEGAN A. ZMICK
FALKENBERG IVES LLP
230 West Monroe Street
Suite 2220
Chicago, Illinois 60606
(312) 566-4803

*Counsel for IlliniCare Health Plan*

## (ADDITIONAL COUNSEL LISTED ON INSIDE COVER)



PRINTED ON RECYCLED PAPER 

MARTIN J. BISHOP
KEVIN D. TESSIER
REED SMITH LLP
10 South Wacker Drive
40th Floor
Chicago, Illinois 60606
(312) 207-1000

*Counsel for Blue Cross Blue Shield of
Illinois, a division of Health Care Service
Corporation, a Mutual Legal Reserve
Company*

KIMBERLY M. FOXX
State's Attorney of Cook County
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-7795

*Counsel for Cook County, through its
Health & Hospitals System d/b/a Cook
County Health*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As          Clear Form

Appellate Court No: 21-2325

Short Caption: Saint Anthony Hospital v. Elizabeth M. Whitehorn

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Meridian Health Plan of Illinois, Inc.

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Locke Lord LLP

(3)      If the party, amicus or intervenor is a corporation:

i)      Identify all its parent corporations, if any; and

Centene Corporation

ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Steven T. Whitmer          Date: May 30, 2024

Attorney's Printed Name: Steven T. Whitmer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).      Yes [✔]      No [ ]

Address: Locke Lord LLP, 111 South Wacker Drive, Suite 4100

Chicago, Illinois 60606

Phone Number: (312) 443-1869                Fax Number: (312) 896-6569

E-Mail Address: swhitmer@lockelord.com

rev. 12/19 AK

Save As        Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2325

Short Caption: Saint Anthony Hospital v. Elizabeth M. Whitehorn

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Meridian Health Plan of Illinois, Inc.

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Locke Lord LLP

(3)   If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

Centene Corporation

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Hugh S. Balsam     Date: May 30, 2024

Attorney's Printed Name: Hugh S. Balsam

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: Locke Lord LLP, 111 South Wacker Drive, Suite 4100

Chicago, Illinois 60606

Phone Number: (312) 443-0403     Fax Number: (312) 896-6403

E-Mail Address: hbalsam@lockelord.com

rev. 12/19 AK

Save As      Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2325

Short Caption: Saint Anthony Hospital v. Elizabeth M. Whitehorn

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**   New attorney appearance

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Meridian Health Plan of Illinois, Inc.

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Locke Lord LLP

(3)      If the party, amicus or intervenor is a corporation:

   i)      Identify all its parent corporations, if any; and

      Centene Corporation

   ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      N/A

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

      N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

      N/A

Attorney's Signature: /s/ Heidi L. Brady          Date: 05/29/2024

Attorney's Printed Name: Heidi L. Brady

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Locke Lord LLP, 111 South Wacker Drive, Suite 4100, Chicago, IL

Phone Number: 312-443-1819          Fax Number:

E-Mail Address: heidi.brady@lockelord.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>21-2325</u>

Short Caption: <u>Saint Anthony Hospital v. Elizabeth M. Whitehorn</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>IlliniCare Health Plan</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Falkenberg Ives LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

<u>Aetna Health Holdings, LLC; Aetna Inc.; CVS Pharmacy, Inc. and CVS Health Corporation</u>

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

<u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>/s/ Kirstin B. Ives</u>    Date: <u>May 30, 2024</u>

Attorney's Printed Name: <u>Kirstin B. Ives</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [✔]   No [ ]

Address: <u>Falkenberg Ives LLP, 230 West Monroe Street, Suite 2220</u>

<u>Chicago, Illinois 60606</u>

Phone Number: <u>(312) 566-4800</u>    Fax Number: <u>(312) 566-4810</u>

E-Mail Address: <u>kbi@falkenbergives.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As          Clear Form

Appellate Court No: <u>21-2325</u>

Short Caption: <u>Saint Anthony Hospital v. Elizabeth M. Whitehorn</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    IlliniCare Health Plan

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Falkenberg Ives LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Aetna Health Holdings, LLC; Aetna Inc.; CVS Pharmacy, Inc. and CVS Health Corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: <u>/s/ Megan A. Zmick</u>    Date: <u>May 30, 2024</u>

Attorney's Printed Name: <u>Megan A. Zmick</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]  No [✔]

Address: <u>Falkenberg Ives LLP, 230 West Monroe Street, Suite 2220</u>

    <u>Chicago, Illinois 60606</u>

Phone Number: <u>(312) 566-4808</u>    Fax Number: <u>(312) 566-4810</u>

E-Mail Address: <u>maz@falkenbergives.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2325

Short Caption: Saint Anthony Hospital v. Elizabeth M. Whitehorn

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Blue Cross and Blue Shield of Illinois, a division of Health Care Service Corporation, a Mutual Legal Reserve

Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Reed Smith LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None.  BCBSIL is an unincorporated division of Health Care Service Corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly traded corporation owns more than 10% of the stock of Health Care Service Corporation

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Martin J. Bishop    Date: 5-30-24

Attorney's Printed Name:  Martin J. Bishop

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  10 South Wacker Drive

    Chicago, Illinois 60606

Phone Number: (312) 207-1000    Fax Number:  (312) 207-6400

E-Mail Address: mbishop@reedsmith.com

| Save As | Clear Form |
|---|---|

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2325

Short Caption: Saint Anthony Hospital v. Elizabeth M. Whitehorn

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Blue Cross and Blue Shield of Illinois, a Division of Health Care Service Corporation

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Reed Smith LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    Health Care Service Corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Kevin D. Tessier    Date: May 30, 2024

Attorney's Printed Name:  Kevin D. Tessier

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address:  Reed Smith LLP, 10 South Wacker Drive, Suite 4000

    Chicago, Illinois 60606

Phone Number: (312) 207-6544    Fax Number:  (312) 207-6400

E-Mail Address: ktessier@reedsmith.com

rev. 12/19 AK

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS....................................................... i

TABLE OF AUTHORITIES ....................................................................................... ix

RULE 35(B)(1) STATEMENT ...................................................................................... 1

BACKGROUND........................................................................................................... 4

REASONS FOR GRANTING THE PETITION ............................................................ 6

    A.    This Decision Will Severely Burden All Parties, Including The Federal Courts. ............................................................................................ 6

    B.    The Majority Incorrectly Assumes Arbitration Is Unmanageable Here.......................................................................................................... 9

        1.    Arbitration Is A Favored, Effective Dispute-Resolution Mechanism. ......................................................................... 9

        2.    The Majority's Rejection Of Arbitration Rests On A Mistaken Assumption................................................... 10

        3.    The Majority's Disparagement Of Arbitration Is Unfounded And Indicates Improper Hostility To Arbitration. .............................................................................. 12

    C.    The Majority Overlooks That, For Most MCOs, All "Paths" To Legal Relief Require Arbitration. .............................................. 14

CONCLUSION.......................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) ............................................................... 13

*Gilmer v. Interstate/Johnson Lane Corp.,*
  500 U.S. 20 (1991) ................................................................. 13

*Gore v. Alltell Commc'ns, LLC,*
  666 F.3d 1027 (7th Cir. 2012) ............................................. 16

*Health & Hosp. Corp. of Marion Cnty. v. Talevski,*
  599 U.S. 166 (2023) ................................................................. 1

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
  473 U.S. 614 (1985) ................................................................. 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) ..................................................................... 9

*Saxon v. Sw. Airlines Co.,*
  993 F.3d 492 (7th Cir. 2021) ................................................. 9

*Viking River Cruises, Inc. v. Moriana,*
  596 U.S. 639 (2022) ............................................................... 14

**Statutes and Rules**

42 U.S.C. §1396a(37)(A) ........................................................... 11

42 U.S.C. §1396u-2(f) ...................................................... 9, 15–16

42 U.S.C. §1983 ............................................................... *Passim*

Am. Arb. Ass'n, *Comm. Arb. Rules and Mediation Procs.* (eff. Sept. 1,
  2022), at Rule R-49 ............................................................... 13

Fed. R. App. P. 35(b) ......................................................... 1, 18

Fed. R. App. P. 40(a) ................................................................. 1

**Other Authorities**

42 C.F.R. §447.46 ............................................................. 15–16

Alan D. Lash, *Using Statistical Sampling to Resolve Large Healthcare Reimbursement Claim Disputes in Arbitration*, 76 DISP. RESOL. J., Issue 2, 2022 .......................................................................................... 12

Barbara A. Reeves & R. Wayne Thorpe, *Arbitrating Health Care Disputes*, COLL. OF AM. ARBS., Oct. 19, 2016 .................................................. 11–12

Katherine Benesch, *Why ADR and Not Litigation for Healthcare Disputes?*, 66 DISP. RESOL. J., Aug.-Oct. 2011 ........................................................ 11

## RULE 35(B)(1) STATEMENT

The four managed-care organization Intervenors/Appellees—Meridian Health Plan of Illinois, Inc., IlliniCare Health Plan, Blue Cross Blue Shield of Illinois (a division of Health Care Service Corporation, a Mutual Legal Reserve Company), and Cook County Health & Hospitals System d/b/a CountyCare Health Plan (together, the "MCOs")—respectfully petition the Court to grant panel rehearing, or rehearing *en banc*. FED. R. APP. P. 35(b), 40(a).

The crux of this case is whether Saint Anthony Hospital, a Medicaid provider, has a right to bring a lawsuit under 42 U.S.C. §1983 against the State to force it to ensure timely, accurate, and transparent payments from managed-care organizations for Medicaid services. The district court held Saint Anthony had no such right and dismissed the lawsuit, but a split panel of this Court reversed. The U.S. Supreme Court granted certiorari, vacated the panel decision, and remanded for reconsideration under *Health & Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166 (2023). On remand, the panel issued another split decision that similarly reversed the district court's decision.

Rehearing is warranted for the reasons stated in the State's separate petition. Additionally, rehearing is needed because the majority decision presents a "question[] of exceptional importance": namely, whether the traditional way of resolving contract disputes—particularly, arbitration—rather than §1983 litigation, is the correct, and practical, means of initially resolving contract-based, Medicaid managed-care payment disputes between providers and managed-care organizations. *See* FED. R. APP. P. 35(b)(1)(B).

Arbitration is an established, efficient, and direct system to resolve payment disputes between Medicaid providers, like Saint Anthony, and the managed-care organizations that pay for providers' services, like the MCOs. Had Saint Anthony honored its contractually-required arbitration obligations, there would be no need for federal courts to interpose themselves into Medicaid payment disputes or provide a novel expansion of potential liability under §1983.

The majority, however, rejects this simple, workable approach for an amorphous subset of these disputes—those falling within the undefined category of "systemic" problems—in favor of a newfound potential expansion of liability under §1983. For three reasons, this approach merits rehearing.

First, funneling a subset of MCO-provider payment disputes into §1983 litigation will severely burden all parties. It increases avoidable costs for payors and providers by turning ordinary claims-payment disputes into expensive, protracted, multi-forum disputes, as explained below. Additionally, the majority decision will strain the resources of the federal courts, as they will have to "adjudicate issues at the claim-by-claim level" to "decipher[] whether a healthcare provider has met" the majority's amorphous "systemic" standard and, "if an MCO has violated" it, craft remedies. (*See* Dkt. 108, at 43–44, 66–67.)[1] The majority compounds these problems by providing scant guidance on crucial issues in these new §1983 claims—such as

---

[1] "ECF x" refers to the district court docket. "Dkt. x" refers to this Court's docket in Case No. 21-2325.

when these claims are available or proper remedies—leaving both courts and participants in the Medicaid program to struggle without meaningful standards.

Second, the majority's suggestion that arbitration is not "manageable" in this context is based upon a mistaken, unfounded assumption that evinces improper hostility to arbitration. Federal courts have consistently required arbitration for contract-based disputes falling within bargained-for arbitration provisions, like those here. The majority, however, gave short shrift to that precedent. And if an exception to that unbroken line of authority is going to be declared for §1983 claims, the full Court should be the one to do so.

Third, the majority overlooks that, for most managed-care organizations, all paths for legal relief for "systemic" problems necessarily require arbitration. The only way to determine if there is a "systemic" issue is to examine "the nature, timeliness, and merits" of each underlying healthcare claim. (*See id.* at 66.) That inquiry runs directly into payer-provider contractual arbitration provisions.

As the majority recognizes, the "stakes" in this case are high. (*Id.* at 3, 43.) This decision directly impacts Illinois' Medicaid managed-care program, for which the State spends more than $12 billion annually. (*Id.* at 5, 43.) It also potentially impacts Medicaid managed-care nationwide, a system involving "hundreds of billions of dollars a year" and "[m]illions of Americans." (*Id.* at 43.) Before the far-ranging implications of the majority decision become the law of the Seventh Circuit, the panel or the full Court should rehear this matter.

## BACKGROUND

Under contracts with the State and federal government, the MCOs administer government-sponsored healthcare services to Illinois Medicaid members enrolled in their respective health plans.  (ECF 1, ¶¶ 22, 26, 34–35.)  In this arrangement, the State pays each MCO a capitated rate on a per-member, per-month basis, and the MCOs contract with and pay healthcare providers for services they render to MCOs' members.  (*Id.* ¶ 26.)

The MCOs and Saint Anthony entered into separate payor-provider contracts governing all aspects of their relationship.  These contracts require: (1) Saint Anthony to provide authorized, covered medical services to MCOs' members and to submit timely claims for payment in a prescribed manner; and (2) the MCOs to process, adjust, pay, or deny claims in compliance with specified timeframes and other requirements.  (*See, e.g.*, ECF 28-1, 34-1, 37-2, 41-2, 47; ECF 45-1, at Exs. 1–2.)  Importantly, these contracts contain arbitration provisions requiring (or for CountyCare, allowing) Saint Anthony to submit to binding arbitration any dispute arising from these contracts.  (*E.g.*, ECF 78-1, at 16, §§6.1–6.2; ECF 79, at 20–21, §XIII(2); ECF 80, at 3–4 (quoting §11.3); ECF 83, at 3–4 (quoting §§9.1–9.2).)

Saint Anthony, however, sued the State under §1983, alleging it violated the Medicaid Act by failing to ensure the MCOs "ma[d]e timely and accurate payment for Medicaid services."  (ECF 1.)  According to Saint Anthony, the MCOs were, among other things, improperly denying and delaying claim payments and imposing administrative burdens on claims processing.  (*E.g.*, *id.* ¶¶ 1, 6, 38, 43–57, 60–61, 72.)

The district court granted the MCOs' motion to intervene as of right, and the MCOs moved to compel arbitration and stay the litigation because the alleged claim-payment disputes could be resolved only by referencing and applying the specifications in their provider contracts.  (ECF 75, 78–80, 83.)

The district court dismissed Saint Anthony's complaint with prejudice, holding there are no individual rights enforceable under the Medicaid Act.  (ECF 108.)  The court then denied as moot the MCOs' motions to compel arbitration because there was nothing left to arbitrate.  (ECF 107–09.)

Saint Anthony appealed.  (ECF 112.)  The MCOs did *not* appeal, and, despite the majority's misstatements, have never asked this Court to stay the case pending arbitration.  (*See, e.g.*, Dkt. 108, at 10, 44, 49.)  The MCOs did, however, join the State's appeal to explain: (1) Saint Anthony's demands ultimately target the MCOs; and (2) arbitration is therefore the proper route forward.

In 2022, a divided panel issued a 2-1 decision reversing the district court.  (Dkt. 60.)  On remand, the MCOs filed a motion to compel arbitration, which the district court terminated subject to the MCOs' right to refile upon the Court's issuance of the mandate.  (ECF 136, 147, 185.)

The State subsequently sought certiorari.  (Dkt. 81.)  In June 2023, the Supreme Court granted certiorari, vacated the panel decision, and remanded for further consideration under *Talevski*.  (Dkt. 82.)

On remand, the panel issued another 2-1 decision, reaching the same result as the previously vacated decision.  (Dkt. 108.)  The majority: (1) acknowledged

arbitrations "might well" be required if Saint Anthony sued the MCOs directly; (2) recognized, if the district court had "to adjudicate issues at the claim-by-claim level," that would "seem to conflict with the arbitration clauses" here; and (3) observed that "factual issues related to the MCOs appear intertwined with Saint Anthony's claim against [the State]." (*Id.* at 8, 35, 49.)

But the majority held that recognizing a §1983 claim here would not be "inconsistent with a carefully tailored Congressional scheme" that includes enforcement of prompt-payment requirements through arbitrations. (*Id.* at 42–43 (internal marks omitted).) Despite acknowledging the MCOs' arbitration request was not before the Court on appeal, the majority still opined that arbitration may be unmanageable on the mistaken belief that it would "easily involve many thousands of individual claims each year" with individual arbitrations for each claim. (*Id.* at 8, 42, 49.)

Judge Brennan, in dissent, recognized that Saint Anthony's remedy lies in "direct[] . . . arbitration or litigation" with each MCO. (*Id.* at 65.)

## REASONS FOR GRANTING THE PETITION

In addition to the reasons in the State's petition, rehearing is appropriate for the following three reasons.

### A.   This Decision Will Severely Burden All Parties, Including The Federal Courts.

First, the majority's decision will severely burden all involved parties.

This decision increases avoidable costs for payors and providers by turning ordinary arbitrations into expensive, multi-forum disputes. As explained below,

instead of just using the less costly and time-consuming informal dispute-resolution processes they bargained for, parties will almost always have to engage in §1983 litigation *and* arbitration. And this expansion of costs and complexity threatens to increase disruption to the parties' business operations, which provide crucial healthcare services to vulnerable Illinoisans. (*See id.* at 4–6.)

Still further, the majority's decision will strain the resources of the federal courts, as it unnecessarily embroils them in litigation over Medicaid-payment disputes. As the entire panel recognized, if federal judges become the arbiters of any MCO-provider disputes providers can frame as involving "systemic" failures or defects, this will "burden[] . . . the judiciary" and "strain judicial resources." (*See id.* at 35, 66–67.) In fact, the majority notes its decision will be unworkable if it "require[s] a district judge to micro-manage claims" and "adjudicate issues at the claim-by-claim level." (*Id.* at 35, 43–44.)

But that is precisely what the majority decision does. It requires district courts to become "the new Medicaid claims processors for the states" until at least the later stages of a case because they must "adjudicate issues at the claim-by-claim level" to "decipher whether a healthcare provider has met [the] unclear ['systemic' problem] standard," "decide if an MCO has violated this new 'systemic' standard," and craft an appropriate remedy. (*See id.* at 43–44, 66–67.) Notably, this burden on district courts does not evaporate when cases conclude. Instead, district courts will have to continue "inspecting whether the individual claims are being paid" appropriately "to gauge the effectiveness of, or a state's compliance with, injunctions." (*Id.* at 66–67.)

7

The majority compounds these problems by providing little guidance on crucial issues, leaving the courts, State, MCOs, and providers adrift without any standards or guardrails.  For example, the majority does not explain when §1983 claims are available, as it does not define what its new "systemic"-problems standard means or what plaintiffs must plead to establish it.  (*See id.* (stating the majority decision requires district courts to apply an "unclear standard" that leaves "district courts . . . to decide what is and what is not a 'systemic' failure . . . without any statutory or judicial directive.").)  It is anyone's guess whether and when there are "systemic" problems sufficient to justify §1983 claims.

Similarly, the majority offers no meaningful guidance regarding the remedies available for such claims.  The majority merely suggests (but does not decide) that "a district court could not force the State to cancel a contract with an MCO" and announces it is "confident that the district court could craft injunctive relief to require [the State] to do *something* to take effective action."  (*Id.* at 3, 34–40 (emphasis in original).)

If this decision is allowed to stand, federal courts in this Circuit, the State, MCOs, and providers will be ensnared in years of costly litigation over the nature and scope of claims that, under settled law, could and should have been submitted to cost-effective arbitration in the first instance.

**B.    The Majority Incorrectly Assumes Arbitration Is Unmanageable Here.**

Rehearing is also appropriate because the majority's determination that arbitration is not a manageable alternative to the creation of new §1983 claims is based upon a mistaken assumption and improper hostility to arbitration.

1.    Arbitration Is A Favored, Effective Dispute-Resolution Mechanism.

It should go without saying that arbitration is an effective, favored method of conflict resolution.  There is a "liberal federal policy favoring arbitration agreements" and holding parties to agreements to arbitrate unless Congress evinced an intention to preclude a waiver of judicial remedies for statutory rights.  *E.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626–28 (1985) (citations omitted); *Saxon v. Sw. Airlines Co.*, 993 F.3d 492, 495 (7th Cir. 2021) (citations omitted).

The majority does not point to anything in the legislative history of the Medicaid prompt-payment rule suggesting Congress determined arbitration cannot effectively address disputes over MCOs' compliance with this rule.  (Dkt. 108, at 1–49.)  In fact, the opposite is true.  Title 42 U.S.C. §1396u-2(f) mandates that contracts between states and MCOs include a provision requiring MCOs to comply with prompt-payment rules, which suggests Congress intended these issues to be addressed by contract, not civil-rights claims.  (*See* Dkt. 108, at 65 ("Section 1396u-2(f) enables a healthcare provider like Saint Anthony to privately enforce their contractual rights against MCOs directly through arbitration or litigation.").)

    2.    <u>The Majority's Rejection Of Arbitration Rests On A Mistaken</u>
           <u>Assumption.</u>

Eliding arbitration's preferred status, the majority suggests arbitration is an unworkable alternative to §1983 claims, at least for issues involving purported "systemic" problems. (*Id.* at 42.) This conclusion, however, proceeds from a mistaken assumption that every disputed claim is subject to its own arbitration. (*Id.* (stating arbitration "represents a claim-by-claim adjudication on the individual provider-MCO level, across many thousands of claims, all in their own arbitrations"), 8 ("Arbitration provisions in [provider] contracts might well require arbitration for each individual claim in dispute. That path could easily involve many thousands of individual claims each year . . . .").) Not even Saint Anthony advanced this thousands-of-arbitrations argument, and this assumption—for which the majority cites nothing in support—is incorrect for three reasons.

First, nothing in the agreed-to arbitration provisions requires such a cumbersome means of adjudication. Consider, for example, the arbitration clause in the Blue Cross-Saint Anthony contract:

> In order to avoid the cost and time consuming nature of litigation, any dispute between Plan and Contracting Provider . . . pertaining to this Agreement . . . shall be resolved using the alternative disputes resolution procedures described in this Section instead of litigation.

(*E.g.*, ECF 79, at 20, §XIII(2); *see also*, *e.g.*, ECF 28-1, at 13, §6.2.2; ECF 84, at 3–4.) As this language demonstrates, whether an MCO is complying with prompt-payment requirements is a "dispute" that could be resolved in a single arbitration with the MCO. Nothing limits an arbitration to a single Medicaid claim.

Second, the majority's assumption is inconsistent with Medicaid's prompt-payment rule, which is based upon claim aggregates, not individual claims. 42 U.S.C. §1396a(37)(A) (requiring payment of 90% of clean claims within thirty days and payment of 99% of clean claims within ninety days). To evaluate compliance with this rule, a factfinder must look at individual claims, but the rule cannot be violated by one claim alone—as the majority acknowledges. (Dkt. 108, at 40 (stating "perfection is not required" under the prompt-payment rule).)

Third, the majority's assumption is inconsistent with how claims arbitrations are conducted in practice. Because of its advantages over litigation—*e.g.*, shorter duration, lower cost, arbitrators with specialized industry knowledge—and ability to provide similar remedies as courts, arbitration is the forum of choice for healthcare disputes. *See, e.g.*, Katherine Benesch, *Why ADR and Not Litigation for Healthcare Disputes?*, 66 DISP. RESOL. J., Aug.-Oct. 2011, at 52, 55–57. In fact, "[p]rovider-payor disputes comprise the largest volume of healthcare disputes that utilize arbitration." Barbara A. Reeves & R. Wayne Thorpe, *Arbitrating Health Care Disputes*, COLL. OF AM. ARBS., Oct. 19, 2016, at 4, https://www.ccarbitrators.org/industry-sector/health-care-disputes/.

Arbitration is a far more direct and effective way for enforcing prompt payment than the §1983 claim the majority envisions, which indirectly seeks relief from the MCOs through nebulous claims against the State. (*See* Dkt. 108, at 10–44.) Rational parties seeking to maximize efficiency and minimize expense would initiate the process providers regularly use: *one* arbitration in which they could resolve *all*

outstanding claims between them. *See* Reeves & Thorpe, *supra*, at 4 (recognizing one arbitration "may involve multiple issues and thousands of claims that arise under one or more contractual relationships or courses of conduct"); Alan D. Lash, *Using Statistical Sampling to Resolve Large Healthcare Reimbursement Claim Disputes in Arbitration*, 76 DISP. RESOL. J., Issue 2, 2022, at 20 ("A single arbitration proceeding often entails multiple parties and hundreds or thousands of miscellaneous disputed reimbursement claims . . . ."). Here, that would mean there would be only four separate arbitrations—one for each MCO—and, in each arbitration, arbitrators would address and resolve all alleged MCO underperformance issues.

### 3. The Majority's Disparagement Of Arbitration Is Unfounded And Indicates Improper Hostility To Arbitration.

The majority's disparagement of arbitration as a workable means of correcting purported "systemic" problems is also unfounded and evinces improper hostility to arbitration.

The majority suggests arbitration cannot correct "systemic" failures. (Dkt. 108, at 42 ("If . . . . [MCOs] ha[ve] been failing to [timely pay claims], repeatedly and systematically, we would not be surprised if provider-MCO arbitrations would do little to correct that problem on a systemic basis.")). But the majority provides no foundation for this supposition, and the record does not support it.

First, Saint Anthony never demanded arbitration of these disputes, but instead wants to use §1983 to bypass arbitration altogether. (*See id.* at 65.) But Saint Anthony agreed to arbitrate any disputes with the MCOs arising under those contracts, including timely-payment disputes. And the Federal Arbitration Act

obligates courts to honor parties' contractual expectations and enforce valid arbitration provisions. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 351 (2011) (citation omitted).

Second, to avoid arbitration and avail itself of the §1983 mechanism, Saint Anthony must show Congress intended to preclude arbitration of such disputes. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (citations omitted). Nothing in the majority opinion suggests that is the case. There is nothing inherent in Saint Anthony's §1983 claim, or in the parties' dispute regarding whether MCOs are complying with Medicaid's prompt-payment rule, that takes these disputes outside of arbitration.

Third, the scope of arbitrators' powers indicates that there is no basis for concluding that arbitration is unworkable here, as arbitrators can and do provide much or all of the relief the majority envisions federal courts providing. Arbitrators enjoy broad power to fashion an award. For example, certain provider contracts adopt the American Arbitration Association's Rules to govern any arbitration. (*E.g.*, ECF 78, at 9–10.) Under those Rules, arbitrators "may grant any remedy or relief that [they] deem[] just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." Am. Arb. Ass'n, *Comm. Arb. Rules and Mediation Procs.* (eff. Sept. 1, 2022), at Rule R-49(a), https://adr.org/sites/default/files/Commercial-Rules_Web.pdf. Moreover, "[i]n addition to a final award, [arbitrators] may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards." *Id.* at Rule R-49(b).

Consequently, arbitrators can decide that MCOs are not paying on a timely basis and order them to do so.

In sum, the majority's speculation that arbitration is unworkable here is conclusory, unfounded, and rests upon the sort of judicial hostility to arbitration the Federal Arbitration Act was designed to prevent.  *E.g.*, *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649 (2022) ("The FAA was enacted in response to judicial hostility to arbitration.").

### C.   The Majority Overlooks That, For Most MCOs, All "Paths" To Legal Relief Require Arbitration.

The majority acknowledges that the MCOs' motion to compel is not before the Court, as the district court did not substantively rule on that motion.  (Dkt. 108 at 8, 49.)  The majority therefore expressly declines to rule on this issue, holding that "this is a matter for the district court to consider when it takes up the MCO intervenors' effort to force all or parts of this dispute into arbitration."  (*Id.*)  Nevertheless, to the extent dicta in the majority decision could be misinterpreted as permitting Saint Anthony to litigate a §1983 lawsuit without first arbitrating the factual predicate for such a claim, it is important to recognize that, for most MCOs, all paths for legal relief for so-called "systemic" failures or defects necessarily involve arbitration.

The majority envisions "two paths to seek legal relief" for the "systemic defects" Saint Anthony alleges exist in the Illinois Medicaid program: (1) "sue MCOs individually" for breach of contract, which "might well require arbitration" given the arbitration provisions in the MCO-provider contracts; or (2) bring a §1983 lawsuit "seeking a court order to require Illinois officials to devise systems . . . ensur[ing] that

14

they perform the statutorily required oversight of MCOs' payments to providers like Saint Anthony." (*Id.* at 8.) But this second path will always run headlong into the mandatory arbitration provisions in the MCOs' provider contracts.

The majority articulates the enforceable right here as "a right to timely payment from the MCOs" on "the 30/90 pay schedule." (*Id.* at 10, 24, 29.) But the only way to ascertain if the factual predicate for State intervention—the "MCOs' systemic failures to provide timely and transparent payments" (*id.* at 11, 37–38)—is present is by determining which claims (how many? what proportion?) are unpaid, paid late, etc. (*See id.* at 66 ("[A] district court cannot decide if an MCO has violated this new 'systemic' standard if it does not examine claims for untimely payments on the merits. Whether the payment schedule even applies to a group of payment claims cannot be decided without evaluating the nature, timeliness, and merits of those claims . . . ."), 49 (acknowledging "factual issues related to the MCOs appear intertwined with Saint Anthony's claim against HFS").)

These latter determinations fall squarely within the broad arbitration provision in each provider contract. Again, each arbitration provision requires (or for CountyCare, allows) Saint Anthony to submit to binding arbitration any dispute arising under the provider contracts. And these contracts govern *all aspects* of the MCO-Saint Anthony relationship, including whether, when, and how an MCO pays submitted claims. (*See* ECF 74, at 2–9.) For example, determining whether claims are "clean," and therefore payable, requires an evaluation of claims based upon provider contract terms. *See* 42 U.S.C. §1396u-2(f); 42 C.F.R. §447.46. If Saint

Anthony establishes "clean" claims, the process and timing for billing, paying, rejecting, or adjusting those claims also hinges on the provider contracts. *See, e.g.*, 42 U.S.C. §1396u-2(f); 42 C.F.R. §447.46(c)(2); ECF 74, at 7–8 & n.10–13. Accordingly, all paths to legal resolution of these contract-based disputes require arbitration to determine whether each MCO has complied with the requirements of its particular provider contract. *See Gore v. Alltell Commc'ns, LLC*, 666 F.3d 1027, 1036 (7th Cir. 2012) ("Whether a particular claim is arbitrable depends . . . upon the relationship of the claim to the subject matter of the arbitration clause." (citation omitted)).

## CONCLUSION

For the foregoing reasons, the Court should grant rehearing, and, upon rehearing, affirm the judgment of the district court.

Respectfully submitted,

Dated:  May 30, 2024

**Meridian Health Plan of Illinois, Inc.**

*/s/ Steven T. Whitmer*
Steven T. Whitmer
swhitmer@lockelord.com
Hugh S. Balsam
hbalsam@lockelord.com
Heidi L. Brady
heidi.brady@lockelord.com
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
Phone: (312) 443-0700

**IlliniCare Health Plan**

*/s/ Kirstin B. Ives*
Kirstin B. Ives
kbi@falkenbergives.com
Megan A. Zmick
maz@falkenbergives.com
Falkenberg Ives LLP
230 W. Monroe Street, Suite 2220
Chicago, Illinois 60606
Phone: (312) 566-4803

**Blue Cross and Blue Shield of Illinois, a division of Health Care Service Corporation, a Mutual Legal Reserve Company**

/s/ Kevin D. Tessier
Martin J. Bishop
mbishop@reedsmith.com
Kevin D. Tessier
ktessier@reedsmith.com
Reed Smith LLP
10 South Wacker Drive,
40th Floor
Chicago, Illinois 60606
Phone: (312) 207-1000

**Cook County, through its Health & Hospitals System d/b/a Cook County Health**

/s/ Kimberly M. Foxx
KIMBERLY M. FOXX
State's Attorney of Cook County
500 Richard J. Daley Center
Chicago, Illinois 60602
Phone: (312) 603-7795

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing Petition for Rehearing complies with the type-volume limitation of Fed. R. App. P. 32(c)(2) and Fed. R. App. P. 35(b)(2)(A) because it contains 3,886 words, excluding the parts of the Petition exempted by Fed. R. App. P. 32(f).

The undersigned further certifies that this petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this Petition has been prepared in a proportionally spaced typeface using Microsoft Word Version 2016 in 12-point Century Schoolbook style font.

Dated: May 30, 2024

*/s/ Steven T. Whitmer*
Steven T. Whitmer

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2024, the Petition for Rehearing with Suggestions of Rehearing *En Banc* was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. All participants who are registered with CM/ECF will be served via the CM/ECF system.


*/s/ Steven T. Whitmer*
Steven T. Whitmer