No. 21-2325

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

SAINT ANTHONY HOSPITAL,
*Plaintiff-Appellant,*

v.

ELIZABETH M. WHITEHORN, in her official capacity as Director of the
Illinois Department of Healthcare and Family Services,
*Defendant-Appellee.*

_____

Appeal from the United States District Court
For the Northern District of Illinois
Hon. Steven C. Seeger
1:20-cv-02561

_____

SAINT ANTHONY HOSPITAL'S RESPONSE
TO PETITIONS FOR REHEARING *EN BANC*

_____

Michael L. Shakman
Edward W. Feldman
William J. Katt
Mary Eileen Cunniff Wells
MILLER SHAKMAN LEVINE & FELDMAN LLP
30 W. Monroe Street, Suite 1900
Chicago, Illinois 60603
Tel: (312) 263-3700
mlshak@aol.com
efeldman@millershakman.com
wkatt@millershakman.com
mwells@millershakman.com

*Counsel for Saint Anthony Hospital*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2325

Short Caption: Saint Anthony Hospital v. Elizabeth M. Whitehorn

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Saint Anthony Hospital

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Miller Shakman Levine & Feldman LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Michael L. Shakman    Date: June 25, 2024

Attorney's Printed Name:  Michael L. Shakman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address:  Miller Shakman Levine & Feldman LLP, 30 West Monroe Street, Suite 1900, Chicago, Illinois  60603

Phone Number: 312-263-3700    Fax Number:  312-263-3270

E-Mail Address: mlshak@aol.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2325

Short Caption: Saint Anthony Hospital v. Elizabeth M. Whitehorn

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Saint Anthony Hospital

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Miller Shakman Levine & Feldman LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Edward W. Feldman    Date: June 25, 2024

Attorney's Printed Name: Edward W. Feldman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** [✔] **No** [ ]

Address: Miller Shakman Levine & Feldman LLP, 30 West Monroe Street, Suite 1900, Chicago, Illinois 60603

Phone Number: 312-263-3700    Fax Number: 312-263-3270

E-Mail Address: efeldman@millershakman.com

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2325

Short Caption: Saint Anthony Hospital v. Elizabeth M. Whitehorn

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Saint Anthony Hospital

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Miller Shakman Levine & Feldman LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ William J. Katt      Date: June 25, 2024

Attorney's Printed Name: William J. Katt

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address: Miller Shakman Levine & Feldman LLP, 30 West Monroe Street, Suite 1900, Chicago, Illinois 60603

Phone Number: 312-263-3700      Fax Number: 312-263-3270

E-Mail Address: wkatt@millershakman.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2325

Short Caption: Saint Anthony Hospital v. Elizabeth M. Whitehorn

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

     ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Saint Anthony Hospital

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Miller Shakman Levine & Feldman LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

       N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Mary Eileen Cunniff Wells     Date: June 25, 2024

Attorney's Printed Name:  Mary Eileen Cunniff Wells

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐ **No** ☑

Address:  Miller Shakman Levine & Feldman LLP, 30 West Monroe Street, Suite 1900, Chicago, Illinois  60603

Phone Number: 312-263-3700     Fax Number: 312-263-3270

E-Mail Address: mwells@millershakman.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 3

I.    The Decision faithfully followed Supreme Court precedent in finding
timely payment enforceable under § 1983. ....................................... 3

    A.    It accurately applied *Talevski/Gonzaga.* ............................... 3

    B.    The Decision properly considered context and history. .......... 5

II.    The Decision does not "nullify" a contract-based enforcement
mechanism created by Congress. ....................................................... 9

    A.    HFS and the MCOs do not apply the correct standard: Are
individual rights incompatible with a mandated remedy. .................. 10

    B.    The existence of an arbitration remedy is not incompatible with
individual rights under §1983. ............................................ 11

CONCLUSION ........................................................................................... 15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

### Cases

*Arlington Central School District Bd. of Educ. v. Murphy,*
548 U.S. 291 (2006) ................................................................. 8

*Bontrager v. Indiana Fam. & Soc. Servs. Admin.,*
697 F.3d 604 (7th Cir. 2012) ................................................. 2

*BT Bourbonnais Care, LLC v. Norwood,*
866 F.3d 815 (7th Cir. 2017) ............................................ 2, 11

*Gonzaga Univ. v. Doe,*
536 U.S. 273 (2002) ................................................................. 3

*Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,*
545 U.S. 409 (2005) ..............................................................8-9

*Health & Hosp. Corp. of Marion Cnty. v. Talevski,*
599 U.S. 166 (2023) ..........................................................2-3, 6

*O.B. v. Norwood,*
838 F.3d 837 (7th Cir. 2016) ............................................ 2, 11

*Pennhurst State School & Hospital v. Halderman,*
451 U.S. 1 (1981) ..................................................................... 8

*Planned Parenthood of Indiana, Inc. v.*
*Comm'r of Indiana State Dep't of Health,*
699 F.3d 962 (7th Cir. 2012) ................................................. 2

*Saint Anthony Hospital v. Eagleson,*
40 F.4th 492 (7th Cir. 2022).................................................. 1

*Saint Anthony Hospital v. Whitehorn,*
100 F.4th 767 (7th Cir. 2024)....................................... *passim*

*Talevski by next friend Talevski v.*
*Health & Hosp. Corp. of Marion Cnty.,*
6 F.4th 713 (7th Cir. 2021)..................................................... 2

*Wilder v. Virginia Hosp. Ass'n,*
496 U.S. 498 (1990) ................................................................. 6

**Statutes**

42 U.S.C. § 1396a(37)(A) ........................................................................ 3

42 U.S.C. § 1396u-2(f) .................................................................... 4-6, 10

42 U.S.C. § 1983 ............................................................................. *passim*

**Rules**

Fed. R. App. P. 35(a) ............................................................................. 1

## INTRODUCTION

The panel has heard the same appeal twice, reaching the same result, based on the same Supreme Court and Seventh Circuit precedent. The only difference is that the second decision, 100 F.4th 767 (7th Cir. 2024) ("Decision"), applied the Supreme Court's opinion affirming this Court's decision in *Talevski*. This Court denied rehearing the first time, 40 F.4th 492 (7th Cir. 2022). Because nothing material has changed, it should do so again.

The two petitions for *en banc* rehearing ("HFS Petition" and "MCOs Petition") satisfy neither requirement of Federal Rule of Appellate Procedure 35(a). *En banc* consideration is not "necessary to secure or maintain uniformity of the court's decisions." Fed. R. App. P. 35(a)(1). The Decision is faithful to a long line of precedent of this Court and the Supreme Court. While timely payment of providers is important to providers, and especially to the finances of safety net hospitals like Saint Anthony Hospital (the "Hospital"), the legal question at issue is not of "exceptional importance" under Rule 35(a)(2). It involves application of extensive Supreme Court and Seventh Circuit precedent regarding individual rights to enforce a section of the Medicaid Act—not the rare case warranting consideration by the full court, as this Court previously decided.

This legal soil is well-tilled. Over a dozen years, many members of this Court on various panels have found private rights to sue under 42 U.S.C. § 1983 for alleged violations of several sections of the Medicaid Act. None was reheard *en banc*. *See Talevski by next friend Talevski v. Health & Hosp. Corp. of Marion Cnty.*, 6 F.4th 713

(7th Cir. 2021) (Kanne, Wood, Scudder, JJ.), *aff'd sub nom. Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023); *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815 (7th Cir. 2017) (Wood, Flaum, Sykes, JJ.); *O.B. v. Norwood*, 838 F.3d 837 (7th Cir. 2016) (Wood, Posner, and Easterbrook, JJ.); *Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't of Health*, 699 F.3d 962 (7th Cir. 2012) (Cudahy, Kanne, Sykes, JJ.); *Bontrager v. Indiana Fam. & Soc. Servs. Admin.*, 697 F.3d 604 (7th Cir. 2012) (Kanne, Wood, Tinder, JJ.). The law in this area is well-developed and requires no elucidation by the full court.

The petitions for rehearing and the *Amicus* brief misrepresent the rulings, rationale, and consequences of the Decision. HFS claims that the Decision ignores controlling case law. Not so. It faithfully applied that law to conclude that Congress intended to give Medicaid providers, like the Hospital, the right to sue the State when the insurance companies hired by the State fail to comply with the statutory requirements for timely, understandable payments, that were written for the benefit of providers.

The petition filed by the intervenor insurance companies ("MCOs") describes the Decision as a sky-is-falling catastrophe. But it only sustained a claim on a motion to dismiss at the pleading stage. It opens the *possibility* that the State might be required—after a hearing in the district court—to take some action to cause the MCOs to do a better job of timely paying Medicaid providers as required by law. It does not eliminate State discretion, tell the district court what relief to enter, make the district court a Medicaid claims administrator, or "disparage" arbitrations.

## ARGUMENT

**I.    The Decision faithfully followed Supreme Court precedent in finding timely payment enforceable under § 1983.**

### A. It accurately applied *Talevski/Gonzaga*.

HFS does not dispute that the Decision cited the correct standards, as set forth in *Talevksi/Gonzaga*,[1] for determining when a statute creates an individual right to sue under § 1983. It disagrees with the Decision's application of those standards. Contrary to HFS's argument, the Decision correctly applied the *Talevski/Gonzaga* standards and its "demanding bar" in concluding that 42 U.S.C. § 1396u-2(f) gives providers the right to sue the State to take action to ensure timely payment from the MCOs. 100 F.4th at 778.

The Decision first focused on the relevant statutory text, Section 1396u-2(f), which provides:

> Timeliness of payment; adequacy of payment for primary care services. A contract under section 1396b(m) of this title with a medicaid managed care organization shall provide that the organization shall make payment to health care providers . . . on a timely basis consistent with the claims payment procedures described in section 1396a(a)(37)(A) of this title, unless the health care provider and the organization agree to an alternate payment schedule.

Section 1396a(a)(37)(A), in turn, declares that a "State plan for medical assistance must . . . (37) provide for claims payment procedures which (A) ensure that" 90% of "clean claims" "are paid" in 30 days and 99% in 90 days. 42 U.S.C. § 1396a(a)(37)(A).

---

[1] *Talevski/Gonzaga* refers to *Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166 (2023), and *Gonzaga University v. Doe*, 536 U.S. 273 (2002). The "Decision" refers to the majority decision.

Following *Talevski/Gonzaga*, the Decision employed traditional tools of statutory construction "to assess whether Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs." 100 F.4th at 778 (quoting *Talevski*, 599 U.S. at 183-84). This "test is satisfied where the provision in question is 'phrased in terms of the persons benefited' and contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'" *Id.*

The Decision correctly concluded that Section 1396u-2(f) satisfied the *Talevski/Gonzaga* test because the statutory text "is concerned with whether the needs of particular persons and entities—providers like Saint Anthony—have been satisfied." 100 F.4th at 781. HFS is wrong that the Decision watered-down *Talevski* to require only a general benefit to a class. The focus of Section 1396u-2(f), the Decision said, "is directly on the interest Saint Anthony asserts here: ensuring that providers receive timely payment from MCOs." In addition to mandatory language ("shall make payment to health care providers . . . on a timely basis . . . ."), it found this focus in the Section's "close attention to provider specific exemptions from the 30/90 day schedule." By explicitly authorizing the provider to agree to a different schedule, it "establishes a personal right to timely payment, which all providers are entitled to insist upon." The Section is "not just a benchmark for aggregate performance." 100 F. 4th at 781.

HFS's does not discuss—let alone attempt to give any other meaning to—the language in Section 1396u-2(f) giving each provider an individual right to set its own

payment schedule, tacitly acknowledging that there is no way to square that unmistakable individual rights with HFS's argument that Section 1396u-2(f) grants providers none.

HFS argues that when the Decision said that "providers like Saint Anthony are the intended beneficiaries of the prompt payment term in section 1396u-2(f)," it applied a benefits test to determine an individual right to sue and disregarded "*Gonzaga*'s central holding [that] . . . rights do not flow from 'benefits' to a class of persons . . . ." HFS Petition at 9. HFS claims that the Decision failed to recognize the difference between the requirement that a statute confer rights, and the first and third *Blessing* factors, which required a benefit for an intended class. *Id.*

But the Decision said exactly what HFS claims is missing: "[N]ot all statutory benefits, requirements, or interests are enforceable under section 1983," and *Talevski* "reinforced earlier precedents allowing rights under Spending Clause legislation" only if the statutory provision "*unambiguously* confer federal rights." 100 F.4th at 778. It clearly stated and applied the correct standard for distinguishing benefits from rights. HFS also suggests, Petition at 4, 6, 9, that the Decision applied the *Blessing* three-factor test instead of the *Talevski/Gonzaga* test. In fact, it applied each separately, and found enforceable rights under each.

**B. The Decision properly considered context and history.**

As part of its *Talevski/Gonzaga* analysis, the Decision considered the context and history of the Section 1396u-2(f)—"standard tools in construing statutes." 100 F.4th at 782. "*Talevski* and *Gonzaga* instruct courts to use them in answering such

questions about applying section 1983." *Id*. (citing *Talevski,* 599 U.S. at 183). HFS's arguments against giving attention to context and history is simply wrong. HFS Petition at 1-2, 10-13. The Decision correctly focused on each:

(i)     *History*: Before MCOs were authorized to pay Medicaid claims, states were required to pay providers directly on the 30/90-day schedule. They had no discretion to deviate. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498 (1990), which the Decision noted remains good law, made timely payment enforceable by providers against the states. In 1997 Congress applied the same payment timetable to MCOs by enacting Section 1396u-2(f), against the background of direct provider enforceability. "We are aware of no indication that Congress intended to cut back on those rights in 1997 when it enacted section 1396u-2(f) to extend the prompt payment rule to managed care." 100 F.4th at 782-83.

(ii)     *Context*: Section 1396u-2(f) was part of the Balanced Budget Act of 1997. The enacting section was entitled "Assuring Timeliness of Provider Payments." From this description the Decision concluded: "That language of assurance further supports recognizing a right enforceable under section 1983." 100 F.4th at 783.

(iii)     *History*: In 2009 Congress extended the timely-payment rule to Indian healthcare and managed care providers. The statute that did so referred to the timely-payment rule incorporated in Section 1396u-2(f) as the "rule for prompt payment of providers," stating that the right granted to Indian healthcare providers was "consistent with the rule for prompt payment of providers under section 1396u-2(f)." 100 F.4th at 783.

(iv) *Context*: HFS argued that its only duty under Section 1396u-2(f) was to place the timely payment requirement in its contracts with MCOs. The Decision looked at other provisions in the Medicaid statute to see if they supported HFS's view. It found provisions indicating Congress' intention to require the States to do more than put timely-payment requirements on paper. *Id.* at 785 (analyzing reporting and oversight responsibilities, auditing and inspections, and provisions for imposing sanctions on MCOs). From this context, the Decision concluded:

> These responsibilities support the conclusion that Congress imposed on states a duty to ensure that the right to timely payment in section 1396u-2(f) is honored in real life. The State argues here that Congress intended to leave the issue of real-life effectiveness to the unfettered discretion of state and federal oversight authorities. But Congress chose language that makes timely payment more than just a paper requirement that would allow state officials to put the terms in their MCO contracts and then forget about them, leaving providers to fend for themselves.

*Id.*

HFS mischaracterizes the Decision as "the majority superimpose[ing] its own policy-based view of the best means to achieve Congress's goal of having MCOs pay providers on time." HFS Petition at 13. Wrong. The Decision did not create the history or context it considered. Congress did, and the Supreme Court in *Talevski* directed that standard inquiry, as do prior decisions.

The Decision addressed and rejected HFS's and the dissent's claim that Section 1396u-2(f) is ambiguous, and thus not enforceable. 100 F.4th at 786, 788. It rejected HFS's alternative reading of the statute, applying statutory language, history and context, to find Section 1396u-2(f)'s "mandatory language, coupled with [HFS's]

7

additional oversight and reporting responsibilities, supports the reading that section 1396u-2(f) *must be* doing more than imposing merely the formality of contract language." *Id.* at 786 (emphasis added). It addressed HFS's "ambiguity" argument, explaining that *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 17 (1981), "taught that Congress may impose conditions on grants of federal money only if it does so 'unambiguously' and 'with a clear voice.'" 100 F.4th at 788. That means that "States cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain,'" *Arlington Central School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (quoting *Pennhurst*, 451 U.S. at 17). Statutory requirements must be viewed "'from the perspective of a state official . . . deciding whether the State should accept Medicaid funds and the obligations that go with those funds.'" 100 F.4th at 788 (quoting *Murphy*, 548 U.S. at 296) (cleaned up). Applying that principle to the text of Section 1396u-2(f), the Decision held:

> A reasonable state official planning to launch a managed-care program would have understood that the state would have to try to ensure that providers receive prompt payment from MCOs. Such an official would not reasonably have concluded that Congress intended that the "rule for prompt payment of providers" be only a proverbial paper tiger. [citation] That conclusion would *conflict* with the state's oversight and reporting obligations and its enforcement duties under the Medicaid Act.

100 F.4th at 788 (emphasis added). Thus, the Decision accurately followed *Pennhurst* and its progeny, finding that HFS's alternative interpretation "conflicts" with the statutory scheme and "must be" wrong. *Id.*

HFS also wrongly concocts ambiguity, claiming a statute is unambiguous only if it has a single plausible meaning. HFS Petition at 8, citing *Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 419 n.2 (2005). But

*Graham County* did not establish a test for determining whether a statute is ambiguous, let alone the test HFS asserts. It dealt with how to interpret a statute of limitations, beginning with its conclusion that the provision was ambiguous. *See* 545 U.S. at 415 ("Section 3731(b)(1) is ambiguous, rather than clear[.]"). It did not say that a statute is unambiguous when only one reading is plausible. It recognized that statutes may be subject to more than one plausible interpretation, but the rules of construction permit a court to determine its meaning. *Id.* at 419 ("where, as the case is here, there are two plausible constructions of a statute of limitations, we should adopt the construction that starts the time limit running when the cause of action . . . accrues").

## II. The Decision does not "nullify" a contract-based enforcement mechanism created by Congress.

HFS asserts that the Decision is a "nullification" of the contract-based enforcement mechanism "that Congress established in § 1396u-2(f)[.]" HFS Petition at 14. The MCOs make the same argument, claiming that allowing providers to sue states to cause the states to do something to address systemic problems with MCO performance "will strain the resources of the federal courts," MCO Petition at 2, 7; threaten[] "disruption to the parties' business operations," *id.* at 7; and "require[] district courts to become the 'new Medicaid claims processors for the states[,]'" *id.* They claim that the Decision is based on "improper hostility to arbitration" and reflects "the majority's disparagement of arbitration." *Id.* at 9, 12. None of this is accurate.

## A. HFS and the MCOs do not apply the correct standard: Are individual rights incompatible with a mandated remedy.

HFS and the MCOs do not acknowledge or apply the controlling *Talevski/Gonzaga* standard for determining whether a federal statutory remedy forecloses an individual right to sue under § 1983. It is whether defendants who oppose recognition of an individual right can meet *their burden* to show that recognition of an individual right is "incompatible with remedies available under the Medicaid Act itself." 100 F.4th at 792. The burden is on HFS to show that "Congress meant to leave providers on their own, or with only such help as state officials choose to provide." *Id.* HFS does not even attempt to make such a showing, relying solely on the dissent's conclusions that allowing suit under § 1983 "would thwart Congress's scheme" and "strip the discretion Congress has provided to Illinois to decide for itself when and how it will enforce an MCO's contractual obligation." HFS Petition at 14-15.

Those conclusory assertions do not withstand analysis. They do not identify any specific Congressional enforcement system, nor explain why any such system is incompatible with an individual right to sue. It is undisputed that "[t]he Medicaid Act includes no express prohibition on enforcement under section 1983." 100 F.4th at 792. At most HFS and the MCOs *imply* the existence of an exclusive, preemptive federal statutory remedy from the fact that Section 1396u-2(f) describes the required terms of the contract between the state agency and the MCOs. They, and the dissent, ignore the fact that Section 1396u-2(f) says nothing about state discretion to enforce

or not enforce the obligation to ensure timely payment of providers. They ignore the fact that the statutory language—that the MCOs "*shall make payment* to health care providers . . . on a timely basis"—is mandatory, not discretionary. They do not meet their burden of demonstrating that the mere existence of a contract between the state agency and the MCOs is incompatible with a separate right by providers to sue the state agency.

When the State is not doing its job of monitoring and enforcing MCO performance, and allowing violations of individual rights of providers, it is established law that providers can sue the state agency under § 1983. Other decisions of this Court, cited in the Decision, uphold individual rights to sue HFS to enforce provisions of the Medicaid law. *See* the Decision's extended discussion of *O.B. v. Norwood*, 838 F.3d 837 (7th Cir. 2016), 100 F.4th at 789-90, including its reliance on Judge Easterbrook's concurrence stating that when HFS failed to act as required by federal law, relief was appropriate even if "[a]ll a district court can do in a situation such as this is require [the State] to start trying."[2]

### B. The existence of an arbitration remedy is not incompatible with individual rights under §1983.

The MCOs argue that the Decision found that "arbitration is not a manageable alternative to the creation of new § 1983 claims . . . ." MCO Petition at 9-10. They argue that arbitrations could be consolidated so that many individual arbitrations

---

[2] Other cases enforcing federal Medicaid law cited by the Decision include *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 821 (7th Cir. 2017), and *Talevski,* both in this Court and in the Supreme Court.

would not be necessary. *Id.* They claim that "a factfinder must look at individual claims [to determine a violation of the 30/90-day rule]." *Id.* at 11. They miss the point: The controlling standard is whether the existence of an arbitration remedy between some (but not all) MCOs and providers, like the Hospital, is *incompatible* with a separate remedy under § 1983 by providers *against HFS* to require HFS to address late payments, inadequate remittance disclosures, and other systemic issues.

The MCOs claim that the Decision "disparages" arbitration as a "workable means of correcting purported 'systemic' problems[.]" *Id.* at 12. Not so. The Decision agreed with HFS that claim-by-claim adjudication would "seem to conflict with the arbitration clauses . . . between the MCOs and Saint Anthony." 100 F.4th at 789. But it noted "good reason to doubt that contractual remedies alone can vindicate the provider's right to prompt payment." *Id.* at 793. It doubted that adjudication of individual claims at the provider-MCO level "across many thousands of claims . . . would even be manageable, let alone superior to a systemic solution implemented by HFS." *Id.* Most importantly, it applied the controlling standard to the possibility of an arbitration/contractual remedy: "we are not persuaded that Congress, implicitly through the contractual model, created a 'comprehensive enforcement scheme that is incompatible with individual enforcement under [section 1983].'" *Id.* (quoting *Gonzaga, Blessing*, and *Talevski*).

*Amicus*, an association representing the interests of MCOs, advances nothing new. It improperly disputes well-pleaded allegations at the pleading stage and ignores the possibility of systemic failures by state oversight agencies, asserting that

the case presents only a "routine reimbursement dispute." *Amicus* Br. 2. It incorrectly states that claims against state agencies for their failure properly to carry out their duties are "unprecedented," ignoring cases in this Court and others cited in the Decision doing exactly that. It repeats the MCOs' erroneous assertion that the Decision requires federal courts to adjudicate individual healthcare claims. It asserts that the Decision rests on the "unfounded assumption" that individual arbitrations are not effective to remedy systemic problems, *id.* at 7, when the Decision actually rests on the proper application of the *Talevski/Gonzaga/Blessing* incompatibility test.

No arbitration between the Hospital and an MCO could possibly solve the shortcomings in *HFS's performance* at issue. No arbitration the Hospital could bring against an MCO could require HFS—which is not a party, and under Illinois law cannot be made a party to an arbitration— properly to monitor and police poor MCO performance. Only a provider lawsuit against HFS can address *HFS's* systemic failures to gather necessary data and act upon it. Addressing systemic failures reduces costs of generating timely payment. Contrary to the MCOs' argument, it is far more efficient than individual provider-MCO arbitrations. By moving the State from passive acquiescence in MCO non-performance, to active engagement to correct deficiencies, the overall benefits will result in net cost savings system-wide. That is what Congress expected.

The MCOs' argument that the Decision will require the district courts to become claims processors for the states and engage in claim-by-claim adjudication,

MCO Petition at 7, is a boogeyman. The Hospital seeks no such relief. Claim-by-claim adjudication is unnecessary for a federal court to determine that HFS is not collecting data necessary even to allow it to determine whether MCOs are paying claims on time, or with sufficient remittance transparency to permit the providers to know whether they are receiving what they are entitled to receive from the MCOs, as the Hospital alleges.[3] Those systemic problems that can only be addressed in a § 1983 lawsuit by a provider against HFS.

The MCOs also complain that the Decision does not provide adequate guidance to the district court on "crucial issues" such as when § 1983 claims are available and what is a "systemic" issue justifying relief. They ignore that this claim is at the pleading stage. Those questions can be addressed, to the extent necessary, on remand (100 F.4th at 792):

> We need not and should not adopt a mathematical definition of "systemic" failures at the pleadings stage. That problem can await further factual development. (To use a metaphor often used in the law, a person can *usually* tell the difference between being in mountains, in foothills, or on a plain even if there is not a sharp boundary between mountains, foothills, and plains.)

HFS and the MCOs cannot plausibly argue that imposing an obligation on HFS to obtain from MCOs sufficient data to monitor their compliance with timely and transparent payment is not a "systemic" issue. Speculation that some other issues may arise that are not systemic, or are outside the scope of appropriate relief, is no reason to scuttle the entire effort, as the Decision recognized. 100 F.4th at 789.

---

[3] *See* Supplemental Complaint ¶ 20 (A45), ¶ 55 (A55); Complaint ¶ 49 (A16).

**CONCLUSION**

The Petitions for Rehearing should be denied.

Dated: June 25, 2024

Respectfully submitted,

SAINT ANTHONY HOSPITAL

By: */s/ Michael L. Shakman*
    *One of its attorneys*

Michael L. Shakman
Edward W. Feldman
William J. Katt
Mary Eileen Cunniff Wells
MILLER SHAKMAN LEVINE & FELDMAN LLP
30 W. Monroe Street, Suite 1900
Chicago, Illinois 60603
Tel: (312) 263-3700
mlshak@aol.com
efeldman@millershakman.com
wkatt@millershakman.com
mwells@millershakman.com

*Counsel for Saint Anthony Hospital*

## CERTIFICATE OF COMPLIANCE

This response complies with the word limitations set forth in this Court's order dated June 11, 2024 (Doc. 130), because it does not exceed fifteen (15) pages.

This response also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32 and the typestyle requirements of Fed. R. App. P. 32(A)(6) because it has been prepared in a proportionally spaced typeface (12-point Century Schoolbook) using Microsoft Word.

June 25, 2024

_/s/ Michael L. Shakman_
*One of the attorneys for Plaintiff-Appellant*
*Saint Anthony Hospital*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on June 25, 2024, I electronically filed this response with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. All participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

June 25, 2024

*/s/ Michael L. Shakman*
*One of the attorneys for Plaintiff-Appellant*
*Saint Anthony Hospital*