No. 21-2325

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| SAINT ANTHONY HOSPITAL, ) | Appeal from the United States |
| *Plaintiff-Appellant*, ) | District Court for the Northern |
| ) | District of Illinois |
| v. ) | |
| ) | |
| ELIZABETH M. WHITEHORN, in her ) | No. 20-cv-02561 |
| official capacity as Director of the Illinois ) | |
| Department of Healthcare and ) | |
| Family Services, ) | |
| *Defendant-Appellee*. ) | |

**MOTION OF PLAINTIFF-APPELLANT SAINT ANTHONY HOSPITAL
TO STAY ISSUANCE OF MANDATE
PENDING PETITION FOR *CERTIORARI***

Plaintiff-Appellant, Saint Anthony Hospital, respectfully moves the Court to stay issuance of the mandate pending its petition for grant of Supreme Court review by *certiorari* pursuant to Federal Rule of Appellate Procedure 41(d). This is the exceptional case that meets the requirements for staying the mandate: that "the petition [for certiorari] would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). The following reasons support the Motion:

(i) This case presents what the *en banc* majority's opinion describes as "an enormous question" (*Saint Anthony Hosp. v Whitehorn*, No. 21-2325, slip op. at 7 (7th Cir. Mar. 14, 2025)), and the dissent describes as "a hard case with high stakes" (*id.* at 57). The issues decided are of more than ordinary importance and extend well beyond the interests of the individual litigants.

(ii) The Supreme Court has granted review of a Fourth Circuit case presenting the same question raised by the conflicting views of the majority and dissenting opinions on rehearing *en banc* in this case—whether the Medicaid statute provides an individual right to sue the State because *Wilder v. Virginia Hospital Ass'n,* 496 U.S. 498 (1990), and *Blessing v. Freestone,* 520 U.S. 329 (1997), continue to be good law. The Supreme Court will decide that issue this term. That question is central to the outcome of this case.

(iii) The Supreme Court previously granted *certiorari* in this very case to determine whether its then-pending *Talevski* decision would change the applicable law; it vacated and remanded a prior decision of this Court in this case for reconsideration in light of *Health & Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023). *Eagleson v. Saint Anthony Hosp.*, 143 S. Ct. 2634 (2023).

(iv) No party to this case will be prejudiced by staying the mandate. This Court's *en banc* opinion upheld the district court's dismissal of Saint Anthony's timely-payment claim, which is the subject of its to-be-filed petition for Supreme Court review. The *en banc* majority and dissenting opinions both recognized Saint Anthony's right to file a separate lawsuit to pursue its claim for transparent disclosures related to Medicaid payments it receives. Staying the mandate does not adversely impact either dismissal of the timely-payment claim or the Hospital's right to file the separate lawsuit.

1. **This is an exceptionally important case.**

In this case, this Court has now issued three separate, full opinions (all with dissents), including an *en banc* majority opinion rejecting Saint Anthony's individual right to sue the State, and two prior panel opinions that upheld, over dissents, Saint Anthony's right to sue to enforce important provisions of the Medicaid Act. At root, this case addresses the relevant case law that applies when federal courts are called upon to decide whether a provider of Medicaid services has the right to sue the States to enforce provisions of the Medicaid laws. Given the vast size of the Medicaid program and the widespread use of third-party managed care organizations to pay providers, defining the controlling standards presents a question of national importance—as the *en banc* majority and dissenting opinions both recognized.

2. **The Supreme Court has granted *certiorari* and will likely decide an outcome-determinative issue that divided the *en banc* majority and dissent in this case.**

The Supreme Court has granted *certiorari* in *Planned Parenthood South Atlantic v. Kerr,* 95 F.4th 152 (4th Cir. 2024), *cert granted in part sub nom. Kerr v. Planned Parenthood*, No. 23-1275, 2024 WL 5148085 (U.S. Dec. 18, 2024), a decision that Saint Anthony brought to this Court's attention by Rule 28(j) letter before the oral argument, and that the *en banc* majority discussed in their opinion. The Supreme Court granted review in *Kerr* with respect to whether the Medicaid law "unambiguously confers a private right upon a Medicaid beneficiary to choose a specific provider." Petition for a Writ of *Certiorari* at *i*, *Kerr v. Edwards*, No. 23-1275, 2024 WL 2864031 (U.S. June 3. 2024) ("*Kerr* Petition") (attached as Exhibit A).

The *Kerr* petitioner focused on—and the Supreme Court agreed to review—a circuit split on the continued relevance of *Wilder* and *Blessing*. The *Kerr* petitioner argued that the split "is deeply entrenched, even after *Talevski*." *Kerr* Petition at 17.

In *Kerr*, as in this case, the Supreme Court previously issued a grant, vacate, and remand (GVR) order in light of *Talevski*. *Kerr v. Planned Parenthood S. Atl.*, 143 S. Ct. 2633 (2023). In its subsequent opinion, the Fourth Circuit recognized the lack of clarity in *Talevski* concerning the continuing relevance of *Wilder* and *Blessing*. *Kerr*, 95 F.4th at 159–64. Based on that lack of clarity, the *Kerr* Petition argued:

> On *Blessing* and *Wilder* specifically, the [Fourth Circuit] court wrote that *Wilder* remained good law and "appear[ed] to doom the State's argument at the starting gate." App.27a–28a. It was not the Fourth Circuit's "prerogative to proclaim a Supreme Court precedent overthrown." App.22a. So the court remained "bound by *Blessing* until given explicit instructions to the contrary—instructions that have yet to come." *Ibid*. Perhaps the courts "will someday be told to abandon *Blessing*, once and for all," the court added, "but it takes more than a whisper to supplant the force of Supreme Court precedent." App.23a.

*Kerr* Petition at 31. The *Kerr* Petition emphasized the views of a concurring Fourth Circuit judge:

> "So," Judge Richardson queried, "are *Wilder*, specifically, and the *Blessing* factors, generally, still good law?" App.124a. "Though *Talevski* suggests a different path, it did not repudiate the holding of *Wilder*." App.36a. And *Blessing* "remains in limbo." *Ibid*. As this case proves then, "even after [*Talevski*]," lower courts still "lack the guidance inferior judges need." App.35a–36a.

*Id*. at 32.

The circuit split described in the *Kerr* Petition mirrors the split between the majority and dissenting judges of this Court on *en banc* rehearing in this case. The

4

split, which the Supreme Court will soon resolve, strongly supports staying this Court's mandate until the Supreme Court speaks.

The disagreement over the continued relevance of *Wilder* and *Blessing* is reflected in the *en banc* majority's opinion, which clearly treated *Wilder* and *Blessing* as no longer good law with regard to an individual right to sue in Spending Clause legislation. The majority opinion stated:

> [T]he Court in *Gonzaga* did not overrule cases like *Wright*, *Wilder*, and *Blessing*. So, confusion persisted. For example, courts—including this one—continued to apply *Blessing*'s multifactor test to determine whether a piece of Spending Clause legislation created individual rights, despite the Supreme Court's instructions to take a more focused approach. *See, e.g.*, *Saint Anthony I*, 40 F.4th at 503 (invoking the *Blessing* factors).

*Whitehorn*, slip op. at 11.

Nonetheless, the majority rejected the relevance of these precedents and largely limited its statement of the controlling law to *Gonzaga University v. Doe*, 536 U.S. 273, 279–90 (2002), and *Talevski*, 599 U.S. at 180–87, 193–94, 230. *See Whitehorn,* slip op. at 11–14. After acknowledging that the Supreme Court in *Talevski* has not overruled *Wilder* or *Blessing,* the majority stated that "whatever is left of that earlier line of cases is largely beside the point." *Id*. at 13–14. The *en banc* majority also noted Judge Richardson's frustration in *Kerr*—and the grant of *certiorari* in *Kerr*—with respect to the lack of clarity in *Talevski* concerning the fate of *Wilder* and *Blessing*:

> [T]he Supreme Court still has not expressly overruled earlier private rights of action cases like *Wright*, *Wilder*, and *Blessing*, even though those cases can be read as employing a less demanding framework. *See Planned Parenthood S. Atl. v. Kerr*, 95 F.4th 152, 166–67 (4th Cir. 2024*), cert. granted in part sub nom. Kerr v. Planned Parenthood*, No. 23-1275,

5

2024 WL 5148085 (U.S. Dec. 18, 2024); *id.* at 170 n.2 (Richardson, J., concurring in the judgment).

*Id.* at 13.

The *en banc* dissent took a very different view of the controlling law and of the fact that, despite an opportunity to do so, the Supreme Court in *Talevski* did not overrule *Wilder or Blessing*. The dissenting opinion stated:

> [T]he [Supreme] Court was asked to overrule a number of its precedents in *Talevski*, including one on provider payments that is especially relevant here: *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 (1990). The Court did not do so.

*Id.* at 36. The dissent found *Wilder* directly relevant and controlling:

> Before Congress adopted section 1396u-2(f) [stating the prompt payment rule] for managed care systems, the Supreme Court decided *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 (1990). The so-called Boren Amendment then required States to pay Medicaid providers rates for medical services that were "reasonable and adequate to meet the costs of an efficiently and economically operated facility." *Wilder* held that the Boren Amendment—without using the term "rights"—nevertheless created rights enforceable under section 1983 with injunctive relief to require state officials' compliance. *Id.* at 510, 524. . . .
>
> The reasoning of *Wilder* easily extends to the statutory provision governing the timing of payments of those rates, the fee-for-service prompt payment rule of section 1396a(a)(37)(A). Other circuits have followed *Wilder* to allow use of section 1983 to enforce other Medicaid requirements for payments to providers under both the fee-for-service model *and managed care*.

*Id.* at 44 (citation omitted).

> [T]he Court was invited in *Talevski* to overrule *Wilder* and chose not to do so. Recognizing section 1396u-2(f) as creating rights enforceable under section 1983 does not push the logic of *Wilder* or *Talevski* any further than the Court itself has already taken it.

*Id.* at 48. And with respect to *Blessing,* the dissenting opinion stated:

6

> The panel opinion summarized why this view [that the prompt payment provision uses individually focused language] is also consistent with the so-called *Blessing* factors. See *Saint Anthony Hospital v. Whitehorn*, 100 F.4th 767, 786–87 (2024).

*Id.* at 53, n.4.

When the Supreme Court decides *Kerr* it will determine the continued relevance of this case law, an issue that divided this Court, and thereby clearly impacted the outcome of Saint Anthony Hospital's timely payment claim. That is good reason to stay issuance of the mandate.

**3.    The fact that the Supreme Court previously granted *certiorari* in this case supports the likelihood that it will grant review again.**

Because the Supreme Court previously granted *certiorari* in this very case to determine whether its then-pending *Talevski* case would change the applicable law, it is more than reasonable to believe it may do so again, in light of the continuing division of opinion in this Court and among the Circuits concerning the relevance of *Wilder* and *Blessing*. The Supreme Court is also likely, once again, to view this case as important. Therefore, unlike the typical case in which a litigant seeks Supreme Court review, a grant of review in light of, and pending the decision in, *Kerr* can reasonably be anticipated.

But for purposes of this Court ruling on this Motion to Stay Issuance of the Mandate, certainty of Supreme Court action on a petition for *certiorari* is not required. Rather, the standard stated in Fed. R. App. P. 41(d)(1) is whether the petition for *certiorari* that Saint Anthony will file will "present a substantial question and that there is good cause for a stay." The foregoing discussion explains why the forthcoming petition, which will focus on whether *Wilder* and *Blessing* remain

7

relevant, presents a "substantial question." The Supreme Court clearly believes that it does, or it would not have granted review of that very issue in *Kerr*. Clearly, there were not five Justices in *Talevski* who were prepared to overrule those cases. Therefore, one cannot automatically assume that the grant of review in *Kerr* was for that purpose. There is good cause to stay issuance of this Court's mandate because if the Supreme Court upholds or clarifies the continuing relevance of *Wilder* and *Blessing,* that could change the outcome of this case.

Good cause is also supported by next factor—the lack of any prejudice from granting the stay.

**4. No party will be prejudiced by staying the mandate.**

There is no action that any party will or might take that depends upon the mandate issuing. The Court's *en banc* opinion upheld the district court's dismissal of Saint Anthony's timely-payment claim. Therefore, staying the mandate will not impact any action that the district court did or might take. Saint Anthony's timely payment claim in the district court is concluded, unless the Supreme Court acts favorably on Saint Anthony's petition, which will seek review only with regard to that claim. Under the *en banc* majority opinion, with which the dissent did not disagree in this regard, Saint Anthony has the right to, and will, file a separate lawsuit to pursue its claim for transparent disclosure of Medicaid payment calculations. The State has conceded that the denial of Saint Anthony's attempt to add that claim to this case does not preclude Saint Anthony from pursuing the claim in a separate

lawsuit. Staying the mandate has no bearing on Saint Anthony's ability to take that action.

**Conclusion**

For the reasons stated, the Court should grant Saint Anthony Hospital's Motion to Stay Issuance of the Mandate.

| | |
|---|---|
| Dated: March 31, 2025 | Respectfully submitted, |
| | SAINT ANTHONY HOSPITAL |
| | By: */s/ Michael L. Shakman* |
| | *One of its attorneys* |

Michael L. Shakman
Edward W. Feldman
William J. Katt
Mary Eileen Cunniff Wells
MILLER SHAKMAN LEVINE & FELDMAN LLP
30 West Monroe, Suite 1900
Chicago, Illinois 60603
Tel: (312) 263-3700
mlshak@aol.com
efeldman@millershakman.com
wkatt@millershakman.com
mwells@millershakman.com

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE-STYLE REQUIREMENTS

1.  This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,206 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E), Fed. R. App. P. 32(a)(5), and Cir. R. 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

March 31, 2025                    */s/ Michael L. Shakman*
                                  *One of the attorneys for Plaintiff-Appellant*
                                  *Saint Anthony Hospital*